# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

.......................................................... )
|  |  |
|---|---|
| PEDRO AGRA, | ) |
|  | ) |
| Plaintiff, | ) |
| v. | ) |
|  | ) |
| GUIDO DOLCI, | ) |
| NADIA SHAHRIK, | ) |
| MASSIMO TACCHINI, | ) |
| GEMIDE SRL | ) |
| MAJOR MODEL MANAGEMENT INC.[1] | ) |
| MAJOR MIAMI LLC. | ) |
| MENSBOARD MANAGEMENT, INC. | ) |
| Defendants. | ) |
|  | ) |

Civil Case No:  23- _____

**COMPLAINT**

**JURY TRIAL DEMANDED**

..........................................................

> **TRIGGER WARNING:**
> **THIS DOCUMENT CONTAINS HIGHLY GRAPHIC INFORMATION**
> **OF A SEXUAL NATURE, INCLUDING SEXUAL ASSAULT**

Plaintiff *Pro Se* Mr. PEDRO AGRA (herein, "PLAINTIFF" or "AGRA") complains of Defendants GUIDO DOLCI, NADIA SHAHRIK, MASSIMO TACCHINI, MAJOR MIAMI LLC, GEMIDE SRL, AND MENSBOARD MANAGEMENT, INC., and in support respectfully alleges, upon information and belief, the following:

---

[1] This lawsuit is based on causes of actions against Major Model Management, Inc., which arose after the company's filling for Chapter 11 Subchapter V filling, i.e., after February 11, 2022. The stay pending bankruptcy was raised on June 27, 2023. See *In re: Major Model Management, Inc*., Bankr. S. D. N. Y. No: 101691.

# TABLE OF CONTENTS

Page No.

**I. JURISDICTION, VENUE AND STANDING** …………………………………………………1

**II. THE PARTIES** …………………………………………………………………..……….2

**III. FACTUAL ALLEGATIONS** …………………………………………………..………..5

**(1) Tacchini' s sexual predatory behavior towards Plaintiff followed a pattern designed for his personal gratification at the expense of Plaintif**

(1.1) *In 2009, Tacchini trafficked Plaintiff to Major Models Milan* …………….…..5

(1.2) *Tacchini sexually attacked Plaintiff in Major Models Milan in 2010* …………6

(1.3) *In 2012, Tacchini intimidated Plaintiff after Plaintiff warned other male model about Tacchini's behavior* …………………………………………………9

(1.4) *Tacchini lured Plaintiff into sexual acts and sexually assaulted him in 2017 in New York* ……………………………………………………..…10

(1.5) *Shahrik conspired with Tacchini in sex trafficking Plaintiff to Major Models New York* …………………………………………………………………12

(1.6) *Tacchini kept requesting sexual favors from Plaintiff for the promise of securing him job opportunities* ………………………………………………...14

(1.7) *Tacchini sexually attacked Plaintiff n in New York in July 2019* …………...16

**(2) Defendants retaliated against Plaintiff following Plaintiff's internal complaint**

(2.1) *In late 2019, Tacchini intimidated Plaintiff for opposing his sexual harassment* ………………………………………………………………...17

(2.2) *In July 2020, Defendants untimely terminated Plaintiff 's contract* …………..18

(2.3) *In September 2020, Plaintiff complained to Dolci about being sexually exploited in Major* …………………………………………………………...19

**(3) Defendants run a criminal enterprise to cover-up Plaintiff's external complaint**

(3.1) *Dolci led intimidation scheme against Plaintiff* ………………………………19

(3.2) *Dolci fabricated criminal charges against Plaintiff* …………………………20

(3.3) *Defendants tampered with witnesses during the New York State Division of Human Rights investigation into Plaintiff's complaint* …………………….…21

(3.4) *Defendants' motives to avoid liability for sexual and financial exploitation of models in the agency* ………………………………………………………23

(3.5) *Defendants abused Chapter 11 to avoid victim(s)' demands for answers* ……..27

*(3.6) Defendants threatened Plaintiff with "all steps" to prevent him from filing this lawsuit* ……………………………………………………………………………...30

**VI. CAUSES OF ACTION**

**FIRST CAUSE OF ACTION:** Sex Trafficking under 18 U.S.C. § 1591, *et seq*. a*gainst Tacchini* ………………………………………………………………….31

**SECOND CAUSE OF ACTION:** Participation in a Sex Trafficking Venture in Violation of 18 U.S.C. § 1591*et seq. against Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc., Guido Dolci and    Nadia Shahrik* ………………………………………..… ………………………….…...35

**THIRD CAUSE OF ACTION:** Violation of The New York Services for Victims of Human Trafficking, N.Y. Servs. Law § 483-bb(c) *against all Defendants* …………...40

**FOURTH CAUSE OF ACTION:** Racketeering Activity in Violation of 18 U.S.C. § 1962 *against Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc., Shahrik and Dolci* ………………………………….40

*(1) The association in fact* ………………………………………………….40

*(2) The common purpose* …………………………………………………..41

*(3) The roles of the participants* ………………………………………….42

*(4) Pattern of racketeering and predicate acts* ………………………………43

*(5) Predicate acts of sex trafficking* ……………………………………...43

*(6) Predicate acts of tampering with a victim and witnesses* …………………43

*(7) Predicate acts of mail and wire fraud* ………………………………...44

*(8) Predicate acts of the bankruptcy fraud* …………………………………46

*(9) Affected interstate and international commerce* ……………………..…….47

*(10) Operation and management* ……………………………………...…..47

*(11) RICO injury* ……………………………………………………….48

**FIFTH CAUSE OF ACTION:** Violation of 18 U.S.C. § 1962(D) by conspiring to violate 18 U.S.C. § 1962(C) *against Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Mana*gement Inc., Shahrik and Dolci …………………………49

**SIXTH CAUSE OF ACTION:** Conspiracy in Violation of 42 U.S. Code §§ 1985(2) and 1985(3) *against Tacchini, Shahrik, Dolci, Major Model Management Inc., Gemide SRL, Major Miami LLC, Mensboard Management, Inc.* …………………………………50

**SEVENTH CAUSE OF ACTION:** Discrimination in Violation of 42 U.S.C. § 1981 *against Tacchini, Shahrik, Dolci, Major Model Management Inc., Gemide SRL, Major*

*Miami LLC, Mensboard Management, Inc.* ……………………………………………51

**EIGHTH CAUSE OF ACTION**: Civil battery *against Tacchini, Major Model Management Inc., Gemide srl, Major Miami LLC* ……………………………………...53

**NINTH CAUSE OF ACTION:** Assault *against Tacchini, Dolci, Shahrik, Major Miami LLC, Mensboard Management Inc., Major Model Management Inc., Gemide SRL* ……………………………………………………………………………………..54

**TENTH CAUSE OF ACTION**: Violation of the Victims of Gender-Motivated Violence Act, N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL") *against All Defendants* ………………………………………………………………………..55

**ELEVENTH CAUSE OF ACTION:** Breach of contract *against Gemide srl and Shahrik* ……………………………………………………………………………..56

**TWELFTH CAUSE OF ACTION:** Breach of fiduciary duty *against Gemide SRL, Dolci and Shahrik* ……………………………………………………………………58

**THIRTEENTH CAUSE OF ACTION:** Negligent supervision and retention *against Major Model Management Inc., Gemide srl,  Mensboard Management Inc., Major Miami LLC, Shahrik and Dolci* ……………………………………………………59

**FOURTEENTH  CAUSE OF ACTION:** Intentional infliction of emotional distress *against Tacchini, Shahrik, Dolci, Major Model Management Inc., Gemide SRL, Mensboard Management, Inc.* ……………………………………………………..63

**FIFTEENTH CAUSE OF ACTION:** Negligent infliction of emotional distress *against Tacchini, Shahrik, Dolci, Major Model Management Inc., Gemide SRL, Mensboard Management, Inc., Major Milan LLC (all Defendants)* ………………..…65

**SIXTEENTH CAUSE OF ACTION:** Alter ego and piercing the corporate veil *against Dolci* ………………………………………………………...…...66

**VII. PRAYER FOR RELIEF** ………………………………………………………..69

## I. JURISDICTION, VENUE & STANDING

1.  This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343, because Plaintiff's statutory claims present federal questions, and pursuant to 28 U.S.C. § 1332(a), because the matter in controversy as to Plaintiff exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States, citizens of a State and citizens or subjects of a foreign state, or citizens of different States and citizens or subjects of a foreign state are additional parties. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and city law pursuant to 28 U.S.C. § 1367(a).

2.  Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

3.  This Court has personal jurisdiction over Major Model Management Inc. in relation to continuous claims and/or claims which arose after company's bankruptcy filling, inter alia, because its principal place of business is located in this state at 38th Street, New York.

4.  Exercising personal jurisdiction over each and all remaining Defendants by this Court is consistent with the Constitution and laws of the United States pursuant to New York's long-arm statute, N.Y. C.P.L.R. § 302(a)(1) – (4), because at all relevant times they have engaged in substantial business activities in the State of New York. Defendants transacted, solicited, and conducted business in New York through their employees, agents, and/or representatives, and derived substantial revenue from such business in New York. At all relevant times, Defendants' activities within New York were purposeful and/or there was a substantial "nexus" between the transactions of their business and the claims asserted here such that Defendants' individual contacts with the forum had a strong relationship to the claims asserted here in, from, and through New York beginning in 2017 through 2023. Defendants transact business in New York as defined by CPLR § 302(a) in that its New York office was used as part of Defendants' racketeering activity, including to conduct multiple financial transactions to realize the bankruptcy fraud scheme of the New York affiliate entity. Personal jurisdiction is also proper under CPLR § 302(a)(2) because Defendants committed tortious acts within the state as alleged herein.

5.  Furthermore, as set forth below, because Major Model Management Inc, its related entity Major Miami, and Gemide SRL served as agents, alter egos, and instrumentalities for each other, each entity's contacts are attributable to the other entities for purposes of establishing personal jurisdiction, under the alter ego and piercing corporate veil doctrines, under the partnership by

1

estoppel doctrine and Defendants' other contractual liabilities to Plaintiff, arising at all relevant times to Plaintiff's modeling contract.

6.   Exercising personal jurisdiction over a collective entity, including specific jurisdiction, justifies exertion of personal jurisdiction over Guido Dolci and Gemide srl. . Personal jurisdiction over a foreign citizen Guido Dolci is all the more appropriate pursuant to forum selection clause [2].

7.   Plaintiff has standing to bring this action pursuant to 18 U.S.C. § 1595 and Victims of Trafficking and Violence Protection Act of 2000 ("TVPA"); 18 U.S.C. § 1964(c); The Alien Tort Claims Act ("ATCA"); 42 U.S. Code § 1981(c); 42 U.S. Code §§ 1985, and under State and City Laws because of injury in fact derived from liabilities under common laws of the state and city of New York.

## II. THE PARTIES

8.   Plaintiff was born December 5, 1984 and is a resident and domiciliary of the New York City. Plaintiff is a former fashion model. and actor of a mixed European and African ancestry. His career spanned from theater performances and commercial appearances in television to fashion, where Agra worked with major international brands, such as Diesel, Benetton, Massimo Rebecchi and Cocal-Cola.

9.   Plaintiff's modeling career began at the age of 16 in his hometown, Rio de Janeiro, Brazil. In his early twenties he traveled to Europe, where in late 2009 he was scouted by Tacchini, a head booker in *Major* modeling agency. Between 2009 and 2020[3], , *Major* was contracted to represent Plaintiff as his modeling agent in Milan[4], and from 2017 until 2020, alsoin New York[5].   In connection to his modeling contract, between 2010 and 2019 in Milan, Italy and New York, the USA, Plaintiff was subjected to human rights abuses at the hands of Defendants. Defendants subjected Plaintiff to oppressive working conditions with inadequate pay for 11 years, coercing him to work for them by threatening deportation, arrest, imprisonment, and sexual violence against him, and unlawfully retaliated against him for claiming sexual harassment and retaliation before the NYSDHR.

10.   Defendant Guido Dolci (hereinafter, "Dolci") is a citizen of Italy. Dolci has been an entrepreneur and businessman in the modeling industry for over thirty years. Dolci is the founder and owner of *Major,* and the company's main shareholder[6]. Since 2017, Dolci serves as Major Model

---

2   In 2022 and 2023 Dolci voluntary accepted personal jurisdiction of this court over him in a related action against him, captioned Burgess v. Dolci, SDNY, Case No. 20-cv-02816-GHW
3   Until Plaintiff's untimely termination
4   Gemide SRL (2009 until 2020), Major Model
5   Major Model Management, Inc.
6   Dolci owns 90% shares of Gemide SRL whereas Dolci's son, Michael Guido Dolci owns the remaining 10%.

Management Inc's President. In such capacity, Dolci is "responsible for the overall long-term vision and planning of the [Major Model Management Inc]. Dolci is chiefly responsible for ensuring that both Major Model Management Inc. and its models are on the path toward success in the industry (...) Dolci is also responsible for reviewing all of the financial information related to [Major Model Management Inc.] (…) Dolci has control of the [Major Model Management]'s bank accounts. Dolci also provides input and is involved in the hiring of upper level staff of the [Major Model Management]"[7]. Dolci is serves as the officer for both Major Model Management Inc. and Major Miami LLC

11.   Defendant Nadia Shahrik (hereinafter, "Shahrik") is a resident of New Jersey. Shahrik, an employee of the Major Model Management, serves as the company's Vice President. In this capacity, she  "oversees [Major Model Management Inc.]'s day-today operations. Shahrik is also responsible for executing all business plans envisioned by Dolci. Shahrik is also chiefly responsible for managing model relationships, addressing any issues related to [Major Model Management Inc.]'s models, interfacing with the  [Major Model Management Inc.]'s clients, and overseeing accounting functions related to [Major Model Management Inc.]"[8]. Shahrik "worked in the modeling and fashion industries for over forty years with experience as an agency owner, booking agent, and manager"[9]. Prior to her employment with Major Model in 2017, Shahrik founded her own modeling agencies, including *Men Women New York Model Management* and Mensboard Management, Inc. Shahrik also serves as Chief Executive Officer of Major Miami LLC

12.   At all times relevant to the Complaint, Dolci and Shahrik employed model managers or agents called *bookers*, whose primary or sole duty was to obtain castings, go-sees, and/or bookings for Plaintiff (and other models), in order for him (and others) to provide modeling services to Defendants' fashion industry clients.. At all times relevant to the complaint, Dolci and Shahrik had the power and/or potential power over the hiring, firing, and/or assignments of Plaintiff's bookers.

13.   Defendant Massimo Tacchini (hereinafter, "Tacchini) is a citizen of Italy, employed by Gemide SRL since 1994. Tacchini is unmarried. Tacchini has been a head booker (or agent) in the agency's men's division. At all relevant times, Tacchini, twenty years of Plaintiff's senior, was Plaintiff's booker, i.e., Plaintiff's agent, having power to assign or not assign modeling jobs to him. For the last 20 years, Tacchini has been regularly traveling to New York for business. In addition to

---

7   In Re: Major Model Management Inc., 22-10169, (Bankr. S.D.N.Y.), Docket No.: 7 (Dolci Declaration)
8   *Id*.
9   *Id.*

other trips for business, he is in New York for an annually organized modeling scouting fare event, held in Hilton Hotel[10].

14. Defendant Gemide SRL (herein "Gemide SRL") is a corporate entity of *Major[11]*, a modeling agency founded by Defendant Guido Dolci in the late 1980'. The company is organized under Italian law as Societa responsabilita limitata (S.r.l.), equivalent to a limited liability company. The company's registered location and headquarter model agency are in Milan[12] (hereinafter, "*Major Models Milan*"). In around 2000, the company, since then branding itself also as *Major Models Group* or *Major Models*, entered the US market by the establishment of its office in New York, incorporated as Major Model Management Inc.

15. Defendant Major Model Management Inc. (herein after "Major Models NY") is a modeling agency registered as a New York corporation  (hereinafter also, "*Major Models New York*"), and *Major*'s subsidiary wholly owned by Gemide srl. It was Defendant Guido Dolci's establishment of *Major Models New York*, which "expanded *Major* into a global agency"[13]. The *Major* advertises *Major Models New York* as one of the company's two headquarters, together with its Milan location. At all relevant times, Defendant Guido Dolci was Major Model Management Inc.'s President, and Defendant Nadia Shahrik served as its Vice President.

16. Defendant Major Miami LLC is Major Model Management Inc.'s affiliate, also operating as a "modeling agency"[14], incorporated in August 2019 under the laws of Florida. Miami, FL, where it maintains its declared Principal Place of Business[15], however the agency is capitalized by its New York affiliate and operates through its New York affiliate's website. Dolci, the company's officer, registered the company under his New York address, and the company maintains its mailing address in New York[16]. Cogency Global Inc, the company based in New York, is Major Miami LLC's Registered Agent. Since 2021, Shahrik serves as the company's CEO.

17. Defendant Mensboard Management, Inc. is a modeling consultancy company incorporated by Shahrik in 1995 under the laws of Florida[17]. Shahrik is the company's owner, and remained the company's President until Feb 2023. The company's principal Place of Business and its mailing

---

10   Tacchini missed only the 2018 event due to his mother's death.
11   Also known as GD Major, where GD stands for "Guido Dolci"
12   Respectively at: Viale Daniele Ranzoni, 5, Milan, Italy and Via Seprio 2, Milan, Italy
13   As per company's advertising material
14   *Id.*
15   Current Principal Place of Business, as of the company's May 1, 2023 corporate annual filling is 407 Lincoln Rd, Miami, FL 33139
16   Current Mailing Address, as of the company's May 1, 2023 annual filling is 344 West 38th Street, Suite 503, NYC, NY 10018
17   In 2003, the company registered its branch in Glade Valley, North Carolina, US.

address are in New Jersey[18]. At all relevant times to this complaint, Mensboard Management, Inc. rendered consulting services, for which Shahrik received $87,725 annually, in addition to her annual payroll of $48,000, both paid by Major Model Management Inc.[19]

18.  Plaintiff is informed and believe and thereon allege that at all times herein mentioned each Defendant sued herein was the agent, alter ego, subsidiary, and/or employee of each of the remaining Defendants and at all times was acting within the purpose and scope of such agency, alter ego, subsidiary relationship, or employment, with the permission and consent of their Co-Defendants and with the knowledge, authorization, permission, and consent and/or subsequent ratification and approval of each Co-Defendant.

### III. FACTUAL ALLEGATIONS

### (1) Tacchini's sexual predatory behavior towards Plaintiff followed a pattern designed for his personal gratification at the expense of Plaintiff

#### (1.1) In 2009, Tacchini trafficked Plaintiff to Major Models Milan

19.  At the end of 2005, in pursuit of an international model career, Plaintiff traveled to Milan, where he first worked with *Attraction*, a modeling agency located at via Sottocorno, Milan. As the agency closed, Plaintiff interviewed with the agent Almerina Colzada ("Colzada"), and started to work in Milan with her.

20.  In 2009, Colzada moved to *Major Models Milan*, where a separate male modeling agency division, called *G Models*, was established within *Major Models Milan*, at the location of *Major Models Milan*[20], with Colzada as a booker. Plaintiff moved to *Major Models Milan* with Colzada where she remained Plaintiff's booker. Moving from *Attraction* to a much bigger agency *Major Models Milan* was a big accomplishment for Plaintiff and a promise of the next career step for him. *Major Models Milan* mansion, Dolci's impressive office, and Dolci's Ferrari were impressiveand symbolized glamour and success which Plaintiff believed were the values represented by the *Major* agency..

21.  Under the supervision of Colzada, Plaintiff's career flourished. His work schedule in 2009 was filled with castings and job assignments, and Plaintiff began to work for the major fashion brands in Italy. While working with the *G Models* in *Major Models Milan*, Plaintiff was scouted by

---

18  Currently at 7000 Blvd East # 26 A, Guttenberg,  NJ 07093
19  See *In re: Major Model Management, Inc*., Bankr. S. D. N. Y. No: 101691, Docket No. 27.
20  Via Seprio 2, Milan, Italy

5

Tacchini. In autumn 2009, Tacchini initialized to book jobs for Plaintiff, supplementary to the ones Plaintiff had booked by Colzada.

22.  In the spring of 2010, Colzada left *Major Models Milan* to work in another agency, *I Love Models*, but Tacchini asked Plaintiff to stay in *Major Models Milan.* To entice him for the modeling contract with *Major*, Tacchini promised Plaintiff that the *Major Models Milan* would sponsor for Plaintiff a work visa. Because, until then, Plaintiff had felt comfortable in the agency, he contracted with *Major Models Milan*, and was assigned to Tacchini as his booker.

*(1.2) Tacchini sexually attacked Plaintiff in Major Models Milan in 2010*

23.  Whereas Colzada's conduct had been entirely professional towards Plaintiff, Tacchini turned out to consistently blur the line of professionalism towards Plaintiff. In spring 2010, shortly after Plaintiff started to work with him, Tacchini began making sexual comments about Plaintiff's body every time Plaintiff was obliged to appear in *Major Models Milan*. Plaintiff ignored Tacchini's comments, feeling embarrassed by Tacchini's sexually charged behavior.

24.  In spring 2010, Tacchini began to take Plaintiff's body measurements in the role of Plaintiff's assigned booker. It is the agency's responsibility to keep model's profile data up-to date, and assigned bookers would take models' body measurements personally. Whereas Colzada had been taking Plaintiff's measurement casually in the bookers' office, with others around, Tacchini, to take Plaintiff's body measurements, was bringing Plaintiff to the empty conference room, in the lower lever of *Major Models Milan* mansion. During those measurements, Tacchini was alone with Plaintiff, and was asking Plaintiff to stay only in underwear.

25.  One day in the summer of 2010, Tacchini casually requested Plaintiff's body measurementsbut this time directed Plaintiff along the conference room to the adjacent file storage room. Tacchini and Plaintiff were alone there. Also at that specific time, Tacchini asked Plaintiff to stay in underwear. While measuring Plaintiff's waist with the metric tape, Tacchini went on his knees in front of Plaintiff and grabbed Plaintiff's intimate parts through Plaintiff's underwear. Tacchini then pulled Plaintiff's underwear down, and performed oral sex on him, while Plaintiff was communicating verbally his disagreement, by repeatedly saying 'no' in Italian. In response, Tacchini scolded Plaintiff to stay quiet, firmly grabbed Plaintiff by his hips, and continued performing oral sex on Plaintiff. Afterwards, Tacchini requested Plaintiff''s silence about the incident, letting Plaintiff understand that Plaintiff's complicity is the condition of arranging the promised visa, and securing modeling jobs. Tacchini was aware that, for Plaintiff, staying abroad without the job permit was extremely stressful.

6

26.  Tacchini's sexual attack evoked a shock response in Plaintiff. He felt intimidated by Tacchini's power over Plaintiff and over Plaintiff's work and career, and the status Tacchini held in the agency and fashion environment. It became clear to Plaintiff that there was no way out of escaping the situation of Tacchini having the oral sex he wanted. Plaintiff froze up and against his will stayed complacent towards  Tacchini's actions.He was afraid to lose his contract with Major Models and be *blacklisted* among other modeling agencies, the practice in the entertainment industry, which Plaintiff, and other male models were aware of.

27.  Tacchini's sexual attack took Plaintiff by surprise. Although Tacchini had verbally harassed Plaintiff in a sexual way before, Plaintiff did not believe that Tacchini's conduct would escalate to physical contact. Until then, Plaintiff felt safe working in *Major Models Milan* and could never think that he would be attacked by the company's employee, let alone inside the agency. Having only professional contacts with his previous bookers of both sexes and not interested in having a private relationship with Tacchini, Plaintiff couldn't  have built a belief that this type of situation could have been a common bread in the model's life.

28.  Due to cultural stereotypes about homosexuality[21], Plaintiff was afraid to reveal the incident to anybody[22]. Concerned about his immigration status, he feared to go to police in the foreign country.

29.  After the incident, Plaintiff experienced mental turmoil and anguish. The event left Plaintiff feeling depressed, shameful, and guilty because of what happened. Because Plaintiff froze during the assault, he had a huge shame on himself for many years. Tacchini's attack made Plaintiff doubt his own sexuality, and Plaintiff became mad at himself because he felt like his thoughts constituted cheating on his girlfriend. Inside, Plaintiff was furious, angry, and confused about his future. Being a top model had always been his dream since he started modeling in Brazil back in 2001. Plaintiff started to be totally disgusted by Tacchini. How could he do such thing?

30.  Tacchini was the God for male models, the power position assigned to him by *Major* management. In his role, he was the one making Plaintiff's job assignments and providing career opportunities. In fact, Tacchini referred to himself in front of Plaintiff and other male models as *Arian Queen.*

---

21  In Brazil, where Plaintiff was raised, the cultural stereotypes of "macho" masculinity are heavily reinforced. There, homosexuality is socially unacceptable and men engaging in such contact are perceived as less man and are socially prosecuted

22  Plaintiff only confided that event to his [then] girlfriend in 2018.

31.  Employed by Dolci in 1994, Tacchini has been wielding unfettered power in the agency as the head booker of the Men's Division in *Major Models Milan*[23]. Tacchini's predatory and sexually harassing behavior towards male models was his *modus operandi* and was caused by the inherently unbalanced power dynamic between him and male models to whom he was assigned as a booker or an agent.

32.  In *Major*, Tacchini was known for his sexually charged, insulting and demoralizing talk to male models, for inappropriate behavior while taking model's measurements one-on-one, and for inviting male models to his private house[24].

33. The following testimonies reflect the daily-life realities of Tacchini's victims recruited by Tacchini among *Major*'s male models:

"I work with Cristiano in Major. It's really good and Professional with me (…) *massimo is famous for this* [sexually harassing behavior] and he is the boss" (*John Doe 1*)

"I heard many stories like this (…) I suppose that was Massimo. Its really sad that in this [era] these things happen and they do nothing with that, wish u good luck!" (*John Doe 2*)

"[about Tacchini] I had my ass grabbed, and smacked, lots of sexual comments etc. It made me so uncomfortable I never wanted to go back." (*John Doe 3*)

"Massimo didn't do anything too crazy with me but of course he gave many comments and so on and touched" (*John Doe 4*)

"There is one man there that probably shouldn't be from the experience I had with him." (*John Doe 5*)

"I've heard that the booker in Milan was a creep (..) I do remember him saying intimate compliments to me the literal 1 or 2 times I went to the agency (…) Massimo" (*John Doe 6*)

---

23  Tacchini remains employed there as of today.
24  Plaintiff never went to his house nor was interested in having a private friendship with him.

8

"Missimo? Or something like that? *I have heard things about him* and met him in person and had been somewhat unprofessional (…) Yea I got the feeling from the second I met him". (*John Doe 7*)

"I worked for them [*Major Model Management Milan*] for fashion week many years ago. I heard stories about one of the bookers being aggressive to the guys. I was very busy with castings so I didn't actually go into the agency much when I was there. I think he was the director. *My mother agent warned me he can get a little touchy feely and a few of the guys felt uncomfortable when he was doing their measurements*". (*John Doe 8*)[25]

34.  *John Doe 9*, while working in *Major Models Milan* for 4 months in the period around 2017 and 2018, was one of Tacchini's victims. Inside the agency, Tacchini would ask to take his pictures, and Tacchini was trying to put his hands inside *John Doe 9*'s pants. *John Doe 9* told Tacchini to back off. Every time *John Doe 9* would come back to the agency, Tacchini would kiss *John Doe 9* on the neck and the cheek, tried to kiss him on the lips, and was in a suggestive tone asking *John Doe 9* if he wanted to start working, implying that if he did something in a sexual manner, Tacchini would get him a job. *John Doe 9* felt it wasn't the first time Tacchini was doing it to the models. Another model told *John Doe 9* that "he [this model] learned to play the game when it came to Massimo", and this model is "one of the biggest models for Dolce & Gabanna". [26]

35.  Models felt compelled to comply because of the tangible benefits provided in exchange to them by Tacchini. Tacchini was in a sole position to secure their *jobs* which they could not otherwise receive from other bookers.

36.  Continuing work after the assault was very negative for Plaintiff and totally destructive to his mental and physical health, and Plaintiff resolved to seek the help of mental health professional.

37.  Yet, Plaintiff could not escape the trap Tacchini caught him in with his sexual attack. Plaintiff stayed in *Major Models Milan* because the modeling job was paying his bills. Plaintiff was in a committed relationship with the prospect of staying in Italy and had to provide for himself and his family back in Brazil. In the weeks following the attack, Tacchini agreed to arrange for Plaintiff's work visa and kept assigning the jobs to Plaintiff. Plaintiff's modeling services during the remainder of 2010 and 2011 produced financial benefits for *Major Models Milan* through the commissions.

---

25  From the New York State Division of Human Rights investigative material, see below.
26  *Id., John Doe 9* was interviewed by the investigator.

*(1.3) In 2012, Tacchini intimidated Plaintiff after Plaintiff warned other male model about Tacchini's behavior.*

38.   After Tacchini's attack in the summer of 2010, Plaintiff suspected that other similarly situated male models could fall Tacchini's victim as well. One day in 2012, Plaintiff was spending his free time with friends in Parco Sempione, Milan, Italy, where he met a younger than Plaintiff man from Plaintiff's country of origin, Brazil, who just arrived in Milan and was also represented by *Major Model Management Milan*. Because the younger model was, similarly to Plaintiff, of mixed European and African ancestry, so-called "mulatto", which Plaintiff believed Tacchini was fancying, Plaintiff concluded that Tacchini was likely to sexually grope the younger model as well. Plaintiff suspected the young naive boy would be easy prey for Tacchini, thus decided to warn him. Plaintiff revealed to him Plaintiff's belief that Tacchini may not be a trustworthy person, and asked him to be careful when Tacchini takes his body measurements as Tacchini may try to "have something with him".

39.   A few days afterward, Tacchini called Plaintiff and requested a meeting with him in the agency. Tacchini sounded mad on the phone and said he had something to talk about with Plaintiff. When Plaintiff arrived at the agency, Tacchini went with Plaintiff to another room to be alone with him and said that he heard from the new model what Plaintiff told him about Tacchini. Tacchini scorned Plaintiff for revealing that "[Tacchini] was a pervert (Italian '*schifozzo*')", and warned him that  "it was better for [Plaintiff] to stay silent, otherwise things would not be good for [Plaintiff]". Plaintiff understood that Tacchini would cause physical harm to Plaintiff if he dared to report Tacchini's sexual misconduct.

40.   Since that episode, Tacchini arranged fewer and fewer castings for Plaintiff and as a consequence, Plaintiff had fewer jobs. Tacchini seemed to stop representing Plaintiff as his booker. Plaintiff did not receive assistance from Cristiano Cesarola, a new booker in the Man's Division, who was supervised and trained by Tacchini. Fewer castings and job offers were in striking contrast to Plaintiff's busy work schedule with plenty of opportunities provided by Tacchini and Plaintiff's other bookers beforehand. Later in 2012, Plaintiff's main source of jobs was several commercial tv castings sent by Viviane Paz ('Paz'), from the agency's Commercial Department.

41.   In 2013, frustrated about Tacchini's retaliation and practically jobless, Plaintiff returned to Brazil, where he commenced finance and investment studies and opened a natural food shop in Rio de Janeiro's Copacabana. *Major Models Milan* kept advertising Plaintiff on their website. In 2014, *Major Models Milan* contracted Plaintiff through Paz's booking for a tv commercial directly requested by *Major Model Milan*'s client. For this job, Plaintiff traveled from Brazil to Milan, and

*Major Models Milan* earned a commission from Plaintiff's modeling services to the client. Although in 2015 and 2016 Plaintiff sustained himself from the natural food shop enterprise income, his dream of pursuing a career in fashion continued.

*(1.4) Tacchini lured Plaintiff into sexual acts and sexually assaulted him in 2017 in New York*

42.   In 2016, Plaintiff traveled to New York for his finance studies, considering looking for modeling opportunities as well[27]. Plaintiff was aware that the time window for his modeling career may soon expire because of his age. Ultimately, Plaintiff decided to give himself a chance for a modeling career in New York, supported in this decision by his family and close friends.

43.   In the summer of 2017, Plaintiff traveled to New York again, planning to interview with the modeling agencies for the modeling contract. In July 2017, Plaintiff emailed Tacchini for contact recommendations for *Major Models New York*.

44.   Tacchini replied immediately. However, instead of recommending Plaintiff to Major Model Management Inc's management directly, Tacchini asked to meet with Plaintiff in person in New York.[28]

45.   Tacchini also referred Plaintiff to meet his befriended booker Danielle Boungiorno (hereinafter, "Boungiorno"), a former *Major Models New York* employee, at that time working in another agency, called *State Management*.

46.   After speaking with Tacchini, Plaintiff went to introduce himself to Buongiorno in the *State* agency. While exchanging the typical greetings kisses on the cheek, Buongiorno attempted to kiss Plaintiff on the mouth. Plaintiff quickly turned his face in discomfort and embarrassment, realizing Buongiorno's sexual innuendoes. Plaintiff left the meeting with Buongiorno with the belief that to have business in that agency, he would have to pay for it with his *body,* by having to accept sexual advances from Buongiorno.

47.   Soon afterwards, Plaintiff spoke about the incident with Buongiorno in *State* agency to his male model friend from that agency, to whom Buongiorno was a booker. Plaintiff's friend revealed that she *did the same thing* with him, and said he heard from another booker in the agency that Boungiorno had a sexual relationship with the top model Sean O'Pry. Both Plaintiff and his friend agreed that the booker's comment alluded to models about the unofficial rules of the fashion industry 'game' where agreeing to sexual acts with the booker was the condition of receiving  contracted modeling job opportunities, not available otherwise.

---

27  For that purpose, Plaintiff contacted Major Model Management Inc.

28  Tacchini informed Plaintiff that Tacchini was coming to New York within a few days for the business he was doing with *Major*, i.e. he.annually scouted male teenagers for modeling jobs in *Major*

48.  On the day of their planned meeting, Tacchini and Plaintiff met in a hotel lobby of Hilton, Midtown Manhattan, where Tacchini was staying. There, Tacchini invited Plaintiff for dinner at the sushi restaurant nearby, enticing him for a dinner by revealing it was covered by *Major*. During the dinner, Plaintiff asked Tacchini if Tacchini could make recommendations about Plaintiff to *Major Models New York*. Tacchini was delaying the topic and finally instructed Plaintiff to walk back with Tacchini to his hotel room to continue the conversation. On the way back, Tacchini bought a bottle of wine in a wine shop, and encouraged Plaintiff to drink with him.

49.  Once alone in the hotel room, Tacchini pinned Plaintiff's body against the wall and went down to perform oral sex on him, while Plaintiff was shocked and dizzy from the alcohol. Plaintiff managed to push Tacchini back and nervously asked what he was doing. Tacchini then explained he could talk to *Major Models New York* Vice President, Shahrik, and arrange with her to interview Plaintiff, but for that to happen, Tacchini asked Plaintiff to spend the night with Tacchini in his hotel room during that Tacchini's remaining stay in New York.

50.  Feeling under pressure, Plaintiff agreed. Tacchini's 2012 retaliation cut Plaintiff off from the modeling business and Plaintiff doubted his modeling abilities. Plaintiff thought that because he was aging, that could be Plaintiff's last chance for a modeling contract. Plaintiff hesitated to refuse Tacchini's offer, fearing Tacchini would retaliate Plaintiff and blacklist him in the modeling business.where Tacchini's influence had a long reach. Plaintiff felt compelled to accept Tacchini's proposal as a sacrifice for a chance to pursue his dream of a modeling career.

51.  In the scheduled evening, Plaintiff met Tacchini in the Hilon lobby.Tacchini sat with his work colleagues, andupon Plaintiff's arrival, Tacchini left the group and took Plaintiff upstairs to his hotel room.

52.  As a *deal*, Tacchini demanded to perform oral sex on Plaintiff and that Plaintiff ejaculated in Tacchini's mouth. Tacchini also asked Plaintiff to  sleep together with Tacchini.

53.  In Tacchini's hotel room, Plaintiff fell asleep first, tired after a long week of fitness exercises he did in preparation to present himself to the modeling agencies. When Plaintiff woke up, to his horror, he realized that Tacchini had been performing oral sex on Plaintiff while he was sleeping. This act was neither part of the deal nor the activity to which Plaintiff ever consented.

 *(1.5) Shahrik conspired with Tacchini in sex trafficking Plaintiff to Major Models New York*

54.  Following the latest meeting with Plaintiff, Tacchini arranged an interview appointment for Plaintiff with Sharrik.

55.  The interview with Shahrik which Tacchini arranged, took place in August 2017 at Major Model Management Inc. location in New York Shahrik positively evaluated Plaintiff and handed him

over a 3-year modeling contract to sign. Major Model Management Inc. and Gemide SRL, as Plaintiff's *mother* agency, were parties to the contract.

56.  Following Shahrik further directions, Plaintiff paid  Major Model Management Inc. certified O-1 visa and travel expenses by himself.In addition, Plaintiff had to arrange and pay full costs of living in the New York city area on his own during the entire duration of the contract.

57.  Upon arriving in New York in October 2017 with enthusiasm towards his promising modeling carrer, Plaintiff regularly checked in with Major Model Management Inc.'s employee, Bridget Reilly, who was designated by Shahrik as his point of contact. Throughout the following weeks, Reilly kept assuring Plaintiff that "[she] think[s] we [*Major* and Plaintiff] will do great things!"

58.  Although Major Model Management Inc. was contracted as Plaintiff's managing agent, despite her initial enthusiasml, Riley neither "*advertised"* Plaintiff nor "*advised"* him, the two of the agency's tasks contracted with Plaintiff. Major Model Management Inc. provided Plaintiff's limited visibility to the clients and advertised Plaintiff's outdated portfolio. In her work, Reilly booked for Plaintiff only few job castings, and frustrated clients with the discrepancies between Plaintiff's advertised and current appearances.

59.  The lack of jobs worried Plaintiff because he had been never even close to staying so much without a job in his modeling career. Although Plaintiff was seeking suggestions and "feedback to help [Plaintiff], help us for better results", Reilly used frequent excuses not to meet him in the agency, and ignored Plaintiff's emails, until Plaintiff found out that she was no longer working for *Major*. In result, Major Model Management Inc. did not secure any modeling job for Plaintiff whatsoever.

60.  In contrary to *Major*, Plaintiff fulfilled all contracted requirements of the contract. This included meticulously taking proper care of the condition of Plaintiff's skin, consulting with the agency about the length of his hair, keeping an excellent body shape, muscle tone, and healthy lifestyle, incorporating America's spirit of self-control and personal development. Plaintiff was "available, willing and able to render services as a fashion model (…) at least three hundred (300) full working days per Contract year". Below is Plaintiff's appearance in 2009 (upper left[29]), and the ones in New York from Dec 2017 (lower left), Jan 2019 (lower right), and Nov 2019 (upper right[30]).

---

29  Photoshooting in Milan
30  Photoshooting by Max Pappendieck in New York







61.  Reilly's and Shahrik's lack of performance as Plaintiff's *managers* contrasted with Plaintiff's determination and dedication to the job of keeping himself in the best possible state and being available as a model. For the first few months of his stay, Plaintiff chose the best neighborhood in New Jersey to live and exercise. The location had proximity to the natural park and was well connected to Manhattan, where the business took place[31]. Plaintiff was willing to commute frequently and assured Reilly that "[he is] always connected". In June 2018, Plaintiff moved to the Upper East Side of Manhattan, where he has been living since then with his then fiancee, and a wife since December 2018.

*(1.6) <u>Tacchini kept requesting sexual favors from Plaintiff for the promise of securing him job opportunities</u>*

62. Throughout the course of 2017 and 2018, Tacchini was in regular contact with Plaintiff via messenger Whatsapp. In late 2017, Tacchini called Plaintiff to follow up on business, and during the

---

31   The place was 37 miles away, and it took around 40min drive and 1-hour train to arrive to Manhattan Penn Station

video chat spontaneously requested Plaintiff to stand up, pull down his pants, and present to Tacchini Plaintiff's genitals, to "know how Plaintiff look[ed] like [then]". Tacchini's request made Plaintiff very uncomfortable, but he felt obliged to comply, as Tacchini made him understand that saying "no" to Tacchini was not allowed. Plaintiff complied, understanding implicitly that Tacchini requested from Plaintiff sexual favors for Tacchini's help in securing Plaintiff's modeling contract in New York.

63.   In March 2018, Plaintiff updated Tacchini that "there are just a few castings until now", which worried Plaintiff. In April 2018, Plaintiff reached out to Tacchini saying he was planning to go to Europe for a work trip to secure job opportunities there, and asked  that "[Tacchini] can present [Plaintiff] to the [Major] clients". In response, Tacchini requested a video call,  during which he asked Plaintiff again to show him Plaintiff's genitals.  Following the call, Tacchini however failed to perform  required formalities to secure Plaintiff's work travel, which he promised earlier.

64.   In spring 2018, Plaintiff reported the latest incident and conveyed the full history of Tacchini's misconduct to his then-girlfriend (now wife).

65.   In early July 2018, Plaintiff contacted Tacchini, updating he was living in Manhattan with his girlfriend[32], and revealed that "[Plaintiff] was thinking about changing the agency here [in New York]. *Major* has not been able to find [him] any job and [Plaintiff has] done only 4 castings in more than 6 months". In response, Tacchini ordered Plaintiff to "wait with the change", and referred Plaintiff to Ms. Boungiorno, who was "going to start working in Major". Tacchini reminded Plaintiff that "she is [Tacchini's] friend", and "we will see what to do[33]".

66.   Because Tacchini told Plaintiff to be happy about Plaintiff's girlfriend, and  accepted Plaintiff's future invitation to Plaintiff's home to meet her, Plaintiff understood hoped that Tacchini would cease to demand sexual favors from Plaintiff, and believed in Tacchini's promised assistance, therefore Plaintiff did not  contact other agencies and stayed in *Major*.

67.   Later in July 2018, Plaintiff followed up with Tacchini sharing with Tacchini his happiness to get engaged. Tacchini sent "congratulations" and said that "[Tacchini] was happy for [Plaintiff]". However, did not follow up about "talking with" Boungiorno as agreed before.

68.   In October 2018, Plaintiff sent a request to Tacchini for Plaintiff's earlier portfolio.  Tacchini initially promised to send it over, however did not, even after Plaintiff's follow-up messages.

---

32   Plaintiff tried to find a solution which would stop Tacchini from requesting more sexual favors from him. He hoped that revealing to Tacchini that Plaintiff was in a relationship would prevent Tacchini from sexually advancing towards Plaintiff.

33   Tacchini made Plaintiff understood that although his annual scouting in New York was cancelled due to his mother's death, Tacchini was planning for future visits in New York.

69.  In early 2019, Plaintiff was still without a job offer from *Major Models New York*, as well as lacked any perspective to have any from *Major Models Milan, and as pe*r contract, Plaintiff was not allowed to look for jobs on his own elsewhere outside these agencies. Determined for his career, Plaintiff took significant out-of-pocket expenses in the amount of $2,000 for photo-shooting, and sought advertisement opportunities from top model websites. Plaintiff reached out to Tacchini to report on his efforts, and asked Tacchini for opportunity to model during european fashion shows that year. Tacchini never replied.

### *(1.7) Tacchini sexually attacked Plaintiff n in New York in 2019*

70.  On July 14, 2019, Tacchini messaged Plaintiff to request a coffee meeting in New York. Desperate to discuss Plaintiff's unfavorable modeling working conditions, he agreed to meet Tacchini. Plaintiff believed that Plaintiff's marital status would prevent Tacchini from approaching Plaintiff with further sexual advances

71.     Although Plaintiff invited Tacchini for a dinner to his home, Tacchini refused and insisted on meeting in Hilton Hotel, refering to the place as "the one from the other time".

72.  Upon Plaintiff's arrival, Tacchini insisted that Plaintiff had a coffee in the hotel lobby with Tacchini and other business event participants.During the conversation, Tacchini revealed to Plaintiff about Dolci's plans to open the new agency in Florida and enticed Plaintiff for the opportunity there. Tacchini seemed to want to discuss business with Plaintiff further.

73.  At some point during the conversation, Tacchini asked Plaintiff to go with him to Tacchini's hotel room to pick up a cigarette, as Tacchini intended to smoke outside. Plaintiff saw an opportunity to discuss his work  with Tacchini He told Tacchini that Plaintiff would be waiting for Tacchini in the lobby, but Tacchini insisted that Plaintiff should go up with him, and calm him down, saying that Tacchini would just pick up the cigarette.

74.  When Plaintiff and Tacchini left the elevator on Tacchini's floor, Tacchini hugged Plaintiff and held him with both arms, attempting to force a kiss, and\Tacchini said he missed Plaintiff very much, and moved to touch Plaintiff's intimate parts. Tacchini's behavior was unwelcome and embarrassing for Plaintiff.

75.  Upon entering the room where Tacchini's sexually explicit touching intensified, Plaintiff pushed Tacchini away and immediately exclaimed in anger that Tacchini could not behave anymore like this towards Plaintiff, trying to deter Tacchini from attacking him further by reminding Tacchini that Plaintiff was married. Plaintiff warned Tacchini in good faith saying that Tacchini could end up in trouble acting this way, because "the world was changing". Tacchini laughed at Plaintiff's words: "Who would believe a Brazilian model over 30 years old?".Plaintiff felt intimidated. Tacchini said

16

that Plaintiff's complaint was unsuccessful in changing Tacchini's behavior, because "[Tacchini] did not care about his job", and "even less after his mother passed away", and "worked only because of his good salary".

76.   Tacchini ended up the conversation by picking up the cigarette and asked Plaintiff to accompany him outside. Plaintiff took the opportunity to explain his unfavorable working conditions. Tacchini promised he would raise the issue to the management of Major Model Management, Inc., where Tacchini was planning to go the following days. Tacchini promised to follow up with Plaintiff afterwards. At the end, Tacchini asked whether Plaintiff's wife was older and rich, and as Plaintiff responded that she was his age and they married for love, Tacchini laughed and said that Plaintiff could have got a rich woman due to Plaintiff's physical attributes.

77.   Although Plaintiff messaged Tacchini several times afterwards to follow-up on Tacchini's promises, Tacchini did not reply.

### (2) **Defendants retaliated against Plaintiff following Plaintiff's internal complaint**

#### *(2.1) In late 2019, Tacchini intimidated Plaintiff for opposing his sexual harassment*

78.   On July 24, 2019, Plaintiff messaged Tacchini to request assistance for the upcoming fashion week in Milan, and asked for a phone call. Tacchini promised to call Plaintiff soon.   Plaintiff replied about feeling relieved, because "[Plaintiff] thought [Tacchini] did not speak with [Plaintiff] anymore because [Plaintiff] did not let [Tacchini] to [have oral sex on Plaintiff] in the hotel". In response, Tacchini referred to the event by a sexual innuendo, and corrected Plaintiff on how to write the word "to suck" in Italian. Below is the original message and its English translation.



Plaintiff:
- Good. I thought you did not speak with me anymore because I did not let you to suck in the hotel. I'm calmer now.
- can you call me?
- Stay well. I just remembered how Milan gets empty in August.
- Big kiss and greetings to everybody there in Major.

Tacchini:
- But are you crazy?  What comes in your mind? (4 emojis of big smile)
- Sure, I'll call you.
- You know that there is a mess this time I have been having only a little time for myself.

Plaintiff:
-All right. I wanna know everything tomorrow.

Tacchini:
- Succhiare (eng: to suck) with 2 c. (16 emojis with big smile)

Plaintiff
- Thank you. Lol

17

79.   In October 2019, Plaintiff messaged Tacchini again, frustrated that Tacchini did not call Plaintiff as he promised earlier. Plaintiff wrote that "it seems to be clear to [Plaintiff] that [Plaintiff] only have [Tacchini's] attention when [Tacchini] approaches Plaintiff with a physical contact", and reminded Tacchini about "[Plaintiff's] complain[t] to that mulatto Brazilian boy about [Tacchini's] conduct" in 2012, and that "after 2012 [Plaintiff] have never been doing as good at work as before". Plaintiff explained his "rush" for modeling career, since "now the market [was] much more open to other races than 10 years ago", and begged for Tacchini's help, as  "without help [Plaintiff would] not be able to do nothing".

80.   Soon afterwards, Plaintiff received a phone call from Tacchini, during which Tacchini referred to the 2017 event in Hilton hotel, as happening "outside of the agency". Tacchini remained salient when Plaintiff reminded him about "things which happened also inside the agency".

81.   Tacchini ended up the phone call by promising to assist Plaintiff in traveling to Italy for work. Tacchini never fulfilled his promise[34].

*(2.2) <u>In early 2020, Defendants untimely terminated Plaintiff 's contract</u>*

82.   Absent any performance from Major Model Management Inc. and Gemide SR, in late October 2019, Plaintiff laid further substantial private investments into his modeling portfolio by contracting for him a photo shooting session with a well-known fashion photographer in New York. Despite his efforts, neither Shahrik, Tacchini, nor other Major Model Management Inc.'s employees secured a single job for him.

83.   In January 2020, Plaintiff messaged a Major Miami LLC's employee to follow-up on Tacchini's referral. He never received a response.

84.   On July 20, 2020, Plaintiff contacted Shahrik regarding the extension of his contract, which, according to the contract, was to be automatically renewed for another year, because neither party had cancelled it at least 3 months in advance.

85.   In his message, Plaintiff asked Shahrik "how should [Plaintiff] proceed", and hope that Shahrik would direct him to the visa extension procedure according to the contract.

86.   To Plaintiff's horror, Shahrik replied through another Major Model Management Inc. employee to inform Plaintiff that "[they] actually discussed with the team", and "won't be renewing [Plaintiff's contract]". In a follow up email, Defendants also refused to Plaintiff a recommendation letter to seek contracting with other modeling agencies.

---

34   In fear he would not be able to travel to Italy ever again, Plaintiff had to hire a lawyer in Italy for this matter.

87.   Losing the job and visa was a horror for Plaintiff and his family, and subjected them to extreme stress, because of quickly deteriorating pandemic situation, which was making any travel in search for job seriously dangerous.

*(2.3) In September 2020, Plaintiff complained to Dolci about being sexually exploited in Major*

88.   Sexually exploited and disposed afterward, Plaintiff decided to end up his fashion career, and to seek grievances towards the agency's owner . Dolci was the person Plaintiff trusted the most in *Major.* Plaintiff believed that Dolci's authority to make changes in the company would prevent other models from having to go through the similar path.

89.   On September 7, 2020, Plaintiff emailed a complaint to Dolci, in which he reported in detail the events of Tacchini's sexual assault and sexual harassment spanning from 2010 to 2019,   the unwelcome sexual advances he received from Boungiorno, detailing as well the recurrent pattern of retaliation Plaintiff experienced from Tacchini, Boungiorno, Shahrik and other employees in the agency when Plaintiff refused sexual advances of both bookers. Plaintiff also reported on the hostile environment he experienced under Shahrik's "step-mother" management, describing how all of "that caused tremendous damage to [Plaintiff's] life".

90.   Dolci responded the same day and announced that "[Dolci] will talk to Massimo [Tacchini]. To check and to have better and clear ideas, [Dolci] w[ould] turn [Plaintiff's] email to [Tacchini] (…) because serious measures are needed", and proposed to talk with Plaintiff on the phone. Plaintiff replied to "really appreciat[ing] [Dolci's] attitude to treat this matter seriously", consented to share his email with Tacchini, and expressed his availability to talk with Dolci over the phone[35].

91.   During the scheduled call on September 9, 2020, Dolci revealed that "[Dolci] saw many stories like this, usually in the other agencies", and reassured he would "follow with them [Tacchini and Bongiorno]". For "helping [Dolci] to make [his] decision" while speaking with Tacchini and Boungiorno, Dolci asked if Plaintiff had "any proof, any picture, messages", since Dolci "need[ed] something that [Dolci] could show to Massimo [Tacchini]". Plaintiff declared to provide Dolci with the copy of the correspondance he had with Tacchini, which he subsequently did.

### (3) Defendants run a criminal enterprise to cover-up Plaintiff's external complaint

*(3.1) Dolci led intimidation scheme against Plaintiff*

92.   During the phone call on September 9, 2020, Dolci ordered Plaintiff not to "do lawsuit" against Major, since, according to Dolci, that would "push [Dolci] to defend two persons that probably are guilty".

---

35   Although Dolci made an initial impression that his intention to talk to Plaintiff was to collect more information before opening the topic and interviewing the accused perpetrators, Dolci slipped his tongue later in the conversation, and revealed that he "did already sent [Plaintiff's email] to Massimo [Tacchini]".

19

93. Dolci further threatened Plaintiff: "Listen to me. Listen to me until the end (…) If you make a lawsuit against the big company, the company could defend themselves in the court with good lawyers (…) in Major [Dolci] ha[s] the capacity to take the lawyer to defend, to take a lot of emails, a lot of jobs, a lot of information that we could defend ourselves"[36].

94. At the end, Dolci ordered Plaintiff to "talk directly to Massimo and Dani", because "if Massimo made a mistake or Dani made a mistake, that is the way"[37].

95. Dolci's refusal to take action to remedy workplace misconduct continued in a follow-up email exchange with Plaintiff.

96. Disappointed with Dolci's approach, on September 15, 2020, Plaintiff sent Dolci a notice in an "attempt to resolve the matter of a longstanding and shocking pattern of sexual harassment in Major", in which Plaintiff demanded necessary changes in the agency to protect other models.

97. On October 8, 2020, Dolci emailed to inform Plaintiff that "considering that [Plaintiff's] allegations [were] not only false but also harmful to the reputation of Major Model Management S.r.l. and its employees, [Dolci] appointed Prof. Att. Simone Lonati *of the Court of Milan (Italy)* in order to *file charges against [Plaintiff]* within seven days from the receipt of this letter".

98. A week later, on October 15,2020, Dolci followed up by another email, in which he informed that because Dolci did not get satisfactory "feedback" from Plaintiff [38], Dolci said that he will "deposit the charges against [Plaintiff], and [said to Plaintiff that Plaintiff should] believe [Dolci that] it's very serious"[39].

99. On 10/16/2020, Dolci emailed Plaintiff threatening  that "[Plaintiff] can't play this kind of game without getting in trouble", and that Dolci will, "see [Plaintiff] in Court"[40].

100. On October 21, 2020, to his horror, Plaintiff unexpectedly received a phone call from Tacchini. Having to confront his attacker was traumatic for Plaintiff, and caused him harm. Tacchini scolded Plaintiff: "Pedro [Plaintiff], what is going on? What [Plaintiff was] doing?, this is not the way to go", and "if [Plaintiff] go through, [Tacchini] [was] gonna address the lawyer", and told Plaintiff that "[Tacchini] [was] still loving Plaintiff". [41].

*(3.2) Dolci fabricated criminal charges against Plaintiff*

101. On December 3, 2020, Plaintiff received an email from "Prof. Avv." Simone Lonati (hereinafter, "Lonati"), which imminently intimidated Plaintiff with actual criminal charges filed

---

36  As per New York State Division of Human Rights investigative material
37  *Id.*
38  Plaintiff believed Dolci had expected Plaintiff to withdraw Plaintiff's allegations
39  As per material record
40  *Id.*
41  *Id.*

against him, causing him to fear arrest and deportation, among assumed consequences of the charges. Lonati, "on behalf of Mr. Dolci, as legal representative of Major Model Management srl, [was] to inform [Plaintiff] that, following the serious and unfounded accusations made by [Plaintiff] in the letters sent on 7 September 2020 and 15 September 2020, my client [Dolci] has filed a complaint- the lawsuit which in this regard brings confrontation in front of the Public Prosecutor's Office at the Court of Milan. The complaint is currently *pending criminal proceedings no. 30478/20 R.G.N.R. in front of the Public Prosecutor's office of the Court of Milan*."

102.     On January 13, 2021, Plaintiff received a Court of Milan's letter in response to the inquiry, which Laura Mezzena, a lawyer hired by Plaintiff, made in the Court of Milan on Plaintiff's behalf, in relation to the alleged charges. The Court's registry search gave "no proceedings against [Plaintiff's] name", which deemed Dolci's above mentioned Index Number of *pending criminal proceedings no. 30478/20 R.G.N.R. in front of the Public Prosecutor's office of the Court of Milan,* a fraudulent representation to intimidate Plaintiff.

*(3.3) Defendants tampered with witnesses during the New York State Division of Human Rights investigation into Plaintiff's complaint*

103.

104.     On November 25, 2020, Plaintiff filed a verified complaint with the New York State Division of Human Rights ('the Division'), pursuant to the New York State Human Rights Law (Executive Law, Article 15), Section 296, against Major Model Management Inc., Tacchini, and Dolci. alleging discrimination based on sex, sexual harassment, and retaliation[42].

105.     The Complaint  was accepted and taken by the Division into the investigation.

106.     In early 2021, Plaintiff contacted several male models from *Major*, who Plaintiff believed could potentially corroborate Plaintiff's complaint in the Division's investigative process[43].

---

42  Case No. 10210251, Federal Charge No. 16GC100597
43  To send them a private message to their Instagram accounts, Plaintiff created a discreet Instagram profile under the name Emanuel Fisherman.

107.     On March 19, 2021, Plaintiff was contacted by one of Major male models, who forwarded to Plaintiff a message, which was sent around to the models by the agency's management,to discredit Plaintiff's complaint and prevent the models to participate in the Division's investigation . ' Below is the original message:



**HACKER ON MAJOR- MILAN ISTAGRAM**

Good morning Guys,
hope this mail find you well in this terrible Covid period time

The following email is a general content referring to all Major models that our istagram account has **been hacked!!!**
We already contacted our lawyers in Milan and New York .
Please do not pay attention to the private message  you may will  receive from an  **anonymous,** "Emanuel Fisherman".
 In case we suggest you to let us know immediately to avoid eventually problems with a **international lawsuit**
Thanks in advance for your attention and coperation

108.     The message fraudulently represented that *Major Model Milan* was "hacked", and that *Major* and the Lawyers Team were regaining control over the "hacking".

109.     Models were instructed to "not pay attention" to the message and to "let *[Major]* know immediately to avoid eventually problems with the international lawsuit".

110.     Despite Defendants' actions to intimidate potential witnesses, several male models, including survivors of Tacchini's sexual misconduct, corroborated the Division's complaint. Some of the testimonies are outlined in this complaint[44].

111.     On February 11, 2022, the Division issued an investigative report and the basis to find a probable cause determination towards Plaintiff's complaint. On March 14, 2022, the Division issued a probable cause determination letter, and the parties were informed that, pursuant to the Human Rights Law, the matter was recommended for public hearing.

112.     In May 2022, the Division supported Plaintiff's Nonimmigrant visa petition for victims of criminal activity[45], certifying that the Division "investigated or prosecuted [Defendants']

---

44  See Johns Does 1-16.
45  The U-visa petition, which received a bona fide determination from the USCIS

criminal activity under NY Penal Law § 130.00(3), § 155.05(e), § 195.05, § 130.40 and §215.10", which occurred in the United States, finding "probable cause for [Plaintiff's] complaint".

*(3.4) Defendants' motives to avoid liability for sexual and financial exploitation of models in the agency*

113.    Sexual harassment is the fashion industry's dirty secret. The prevalence of sexual harassment in fashion industry is twice as high as its average in the average workplace[46].

114.    Fashion and entertainment business makes models vulnerable. Similarly to Plaintiff, every year a cohort of young men of good health, self-confidence and strength, leave their families and home countries to pursue a dream of a career as a model. Most of the models come from the countries of low socioeconomic development index. Because of lack of other opportunities, modeling jobs constitute the model (and often their families) main source of income. Besides beauty, what models fundamentally have in common is the hope of a better life. Models are scouted at their early age and leave their home countries for the contracts with modeling agencies in a foreign country, and as such, as well as due to the demands of the business, they are cut off from their social support network and their continued education is compromised.

115.    Where hope exists, so does the opportunity for others to make a profit by taking advantage. Fashion and entertainment industries are run by powerful, high-ranking professionals. Power and money attracts sexual predators, who thrive in the industry where the job of vulnerable models is to make something desirable. Like in many creative industries, those who are considered an artist-genius, tend to be given impunity around sexual misconduct. The artist-genius tag has been systematically used in fashion and entertainment business to excuse abuse and exploitation and to justify the sexual misconduct of powerful men. Fashion photographers, designers, and, as this lawsuit reveals, also modeling agents and agencies owners, are treated as god-like figures, and sexual predators in those circles often create a social image, or persona around themselves with deep disregard for other groups, including other races.

116.    Fashion and entertainment industries have been known from intentional cover-ups of sexual abuse of children and adults. The allure of star power, the intoxication of drugs, intimidation, and the circumstances of desperation for those seeking a professional livelihood, create the conditions which prevent victims from reporting abuse or hinder their complaint efforts. Agents, including Defendants, often manipulate victims into signing contracts without giving them the chance to fully read it or consult it with an attorney. Among many silencing tactics, agencies, including Defendants, require the models to sign *Non-Disclosure Agreements* and *Waivers of*

---

46  The surveys conducted by EEOC and Model Alliance, data from 2018

23

*Liability and Hold Harmless Agreements*, saying its' "just a formality", whereas in reality the deceitful language of those contracts forces survivors into legal silence.

117.      Major Model Management Inc., Shahrik, Tacchini, Dolci and Gemide srl required from Plaintiff (and other models) to sign a *Waiver or Liability and Hold Harmless Agreement*, which "release[d], waive[d], discharge[d], and covenant[ed] not to sue MMMY, their agents, managers, or employees, from any liability, claims, demands, actions, and causes of action whatsoever". *Major* revealed its intention to deter models from raising any liability complaint in unmistakable language by using the word "whatsoever", although *Major* knew that in reality, by law, the release of liability waiver is not applicable to a gross negligence and/or intentional harm from *Major*'s own acts.

118.      Major Model Management Inc., Shahrik, Tacchini, Dolci and Gemide srl required from Plaintiff (and other models) to sign a contract, according to which models "must abide by the Arbitration Procedure, and all disputes arising in connection with this agreement are to be arbitrated pursuant to the Arbitration Procedures", although *Major* knew that in reality, by law, the mandatory arbitration of sexual harassment claims is prohibited under the N.Y. C.P.L.R. 7515(b)(iii).

119.      Sexual exploitation of male models is common and sexual misconduct allegations by male models have been put forward against some of the fashion industry's biggest names, including photographers[47] and fashion designers[48]. Male models are the lowest in the industry pecking order. As the most disposable members of the fashion world, they face a lot of pressure to do what is required to get them a job. Also, the patriarchy works on a "big boys don't cry" basis – to speak out isn't easy.

120.      The following testimonies reflect the daily-life realities of sexual exploitation among *Major*'s male models:

> "I had an issue with a famous Italian designer in my early career" (*John Doe 10*),

> "I do know one of my friends was groped by someone who was formerly with the agency" (*John Doe 11*),

> "that happened to me but not in Milan" (*John Doe 12*),

> "I can tell you that a client (biggest client in Italy) has this kind of harassment to me. Touching me and kissing me for example….I didn't want it of course, but the position of

---

47  E.g., Mario Testino (13 accusing male models) and Bruce Weber
48  E.g., Alexander Wang

the client made my arms low because I was maybe under control to his power" (*John Doe 13*),

"I am not surprised, the entire entertainment industry is run by a bunch of weirdo felons. This [name retracted] tried to suck my d*ck and I said no, but he kept on trying to touch me inappropriately so I slapped the sh*t across his f***ing head. I haven't modeled in 4 years. That industry sucks." (*John Doe 14*)[49]

121.     The entertainment industry is a business of connections and relationships. Models establish relationships with modeling agencies, and are required to maintain a working relationship with their booker. It is not unusual to schedule a meeting with a booker at the location of the fashion event, hotel lobbies or restaurants.

122.     Models provide services and are pursuing a career that is a business, just like professional athletes, lawyers, physicians, therapists and various other industries which are critical to the economy.

123.     Models are entangled by modeling agencies into actual production factories with a bottom line and customers, however lack labor protection because modeling agencies classify models as independent contractors and not employees.

124.     Although the fashion industry is a $2.5 trillion global industry, and New York is its center in the United States, currently, models and creatives work in New York through modeling management companies which, unlike talent agencies, escape licensing and regulation[50].

125.     Modeling agencies, including Defendants, prey on their models. It was a common experience among current and former *Major*'s male models to: "had problem with Major NYC and Milan [with respect] to money" (*John Doe 15*), or "being treated unfair on the business end" (*John Doe 16*)[51].

126.     The allegations of unpaid wages against Major Model Management Inc. have been already raised elsewhere[52].

---

49  From the New York State Division of Human Rights investigative material.
50  The pro-labor legislation called the Fashion Workers Act aiming at regulating predatory practices of management agencies in New York has been recently passed by the New York Senate Labor Committee.
51  From the New York State Division of Human Rights investigative material.
52  *Burgess v. Major Model Management Inc.*, SDNY Case No: 1:20-cv-02816-GHW

127.     Although Major Model Management Inc. uses the "employment agency" business model within the meaning of GBL § 171(2), it has been operating as an unlicensed "employment agency"[53], as demonstrated in this Complaint.

128.     At all relevant times, Major Model Management Inc., and Gemide SRL were "designate[d] and appoint[ed] attorney-in-fact for [the model] in connection with [model's] services"[54]. Pursuant to NY General Obligations Law § 5-1505, this gave rise to a fiduciary duty. That Major Model Management Inc. had fiduciary duty towards its models, has been ruled in this Court[55].

129.     Major Model Management Inc. had the policy of systematic breach of its fiduciary duty, including the breach of fiduciary duty concerning model's funds[56] and model's private information[57].

130.     At relevant times to this complaint, Major Model Management Inc. was in noncompliance with Stop Sexual Harassment Act in NYC, which requires NYC employers, among other duties, to conduct annual sexual harassment prevention training for all employees, independent contractors and freelancers who work in New York City[58], to display the Stop Sexual Harassment Act Notice poster in a conspicuous location, and to provide fact sheets, policies, and training information.

131.     *Major* organized and sponsored private events, often framed to models as Top Model contests with promise of new career opportunities, where young models are required to socialize with powerful people in business, including modeling agencies executives, as Dolci. One of such event from 2018 is depicted below. Dolci is circled in red.

---

53  *Id.*
54  *Id.,* Plaintiff's modeling contract with Major Model Management Inc. and Gemide srl.
55  *Hoffmann v. Major Model Management Inc.*, SDNY Case No: 1:20-CV-6941-LTS-JLC
56  *Burgess v. Major Model Management Inc.*, SDNY Case 1:20-cv-02816-GHW
57  *Hoffmann v. Major Model Management Inc.,* SDNY Case No: 1:20-CV-6941-LTS-JLC
58  The requirement of the independent contractor training was contained in the guidance under the Stop Sexual Harassment Act from 2018, effective April 2019. Effective January 11, 2020, independent contractors and freelancers who work in New York City must complete annual sexual harassment training. Employer also should have reviewed policies prohibiting harassment and discrimination.



132.     It has been a common practice of Dolci to organize dinners with Dolci's powerful male friends, for which Dolci has been inviting *Major*'s female-only models. Participation has been required if model is "serious about her career". Some of the models did not feel comfortable having to be around older man during these dinner, as the requirement of their modeling job.

133.     Sexual encounters, sexual relationships and romantic relationships between *Major*'s models and people with power or authority in *Major* were *not* discouraged by *Major*'s policy nor common practice. Such encounters were known, discussed or were the open secret in *Major*, and were known by other modeling agencies. The instances of well known encounters and/or sexual relationships which involved inherently unbalanced power dynamic, included two female employees of Major Model Management Inc., Major Model Management Inc.'s former President Katia Sherman, and Major Model Management Inc.'s booker and agent, Daniele Boungiorno, who had been engaging in this way with Major Model Management Inc.'s male models.

134.     *Major*'s upper management was organized around the culture of favoritism and loyalism, and the policy based on personal connections and personal liking. *Major*'s employees, including Major Model Management Inc.'s bookers and agents, who did not comply with or conform with the culture enforced in *Major* were losing their jobs quickly.

135.     *Major*'s unstated policies produced discriminatory patterns and practiced against protected groups. Plaintiff is a member of protected group based on sex, race and national origin. Major's discriminatory patterns and practices caused *quid pro quo* sexual harassment and hostile environment for Plaintiff.

*(3.5) Defendants abused Chapter 11 to avoid victim(s)' demands for answers*

136.     Following the imminent probable cause determination by the New York State Division of Human Rights complaint, and facing public hearing, Defendants designed, and run a

27

criminal bankruptcy fraud scheme to avoid liability towards Plaintiff's complaint, and towards other pending actions against Major Model Management Inc. It was Plaintiff's complaint however, which Defendants intended to cover-up.

137.     Between 2020 and February 2022, Defendants undercapitalized Major Model Management Inc. entity, such that at the bankruptcy petition date of February 11, 2022, Defendants declared only $170,000 in cash flow, although in previous years, the company's annual revenue was even $12,000,000. Defendants however turned the lucrative trillion-dollar New York fashion market exclusively to their private financial gain, and siphoned of Major Model Management Inc.'s assets beyond the reach of creditors.

138.     Between 2020 and February 2022, Dolci, in charge of Major Model Management Inc's financial operations, transferred the money to sponsor his and his family's private endeavors, including Gemide SRL's "entertainment division" - *GD Major Entertainment*, and *Green Fashion Week*, the annual venture allegedly created to promote sustainability in fashion, which is however to seasonally gathered Dolci, Dolci's son and their guests on a fuel-hungry cruise ship on the Mediterranean Sea Tour.

139.     Between Feb 2020 and 2022 Dolci, transferred over $100, 000 from Major Model Management Inc., to capitalize the affiliate Major Miami LLC[59], and has been paying annual operational costs of the agency throughout.

140.     On February 11, 2022 ("the Petition Date"), the same day when the Division issued its final investigative report and probable cause determination, unscrupulous Defendant-Appellee commenced a voluntary case under Chapter 11, Subchapter V of the Bankruptcy Code[60], and sought relief for a total of $11,421,855 unsecured debts.

141.     Defendants lacked valid reorganization purpose. Major Model Management Inc. lacked a real financial distress, and financially healthy affiliates Gemide SRL and Miami LLC could be tapped to satisfy Major Model Management Inc.'s alleged legal liabilities if desired. Instead of capitalizing the New York subsidiary however, Dolci under-capitalized it in the last year proceeding the bankruptcy in pursue of the bankruptcy scheme designed to avoid liability from Plaintiff's complaint, while continuing to profit off of the Debtor's collateral to non-debtor insiders and affiliates - Dolci, Nadia Shahrik, Major Miami LLC, Gemide SRL and Mensboard Management Inc.

---

59  *Id.*  SOFA, Docket No. 27
60  See *In re: Major Model Management, Inc*., Bankr. S. D. N. Y. No: 101691, Docket No. 1.

142.      In its bankruptcy fillings, Dolci declared that "the Debtor elected to seek the protections of the Bankruptcy Code", because in 2020, the entity was subjected to "multiple lawsuits where models alleged that they were owed monies", and. the "cost of such defense was in excess of $500, 000 and harmed the business"[61].

143.      On February 25, 2022, Defendants, under penalty of perjury, listed other pending legal actions in which the Debtor had been involved, but fraudulently concealed pending administrative proceeding against the Debtor on the New York State Division of Human Rights forum, i.e., Plaintiff's sexual harassment and retaliation complaint[62].

144.      On February 14,2022, Heidi J. Sorvino was appointed as subchapter V Trustee in the Debtor's case. The Trustee was never informed about Debtor's and Debtor-in-possession's liability towards Plaintiff's complaint.

145.      In result of Defendants' fraudulent concealment,, Plaintiff was deprived of the due process in filling his Proof of Claim against the Debtor's estate[63].

146.      Defendants defrauded not only bankruptcy court but also the NYSDHR. Following the NYSDHR determination issued in March 2022, Defendants's counsel made multiple file requests to the NYSDHR, but did not inform the NYSDHR about the bankruptcy filing nor requested a stay of the proceedings to enable Plaintiff to protect his rights in the bankruptcy court.

147.      In late 2022, the NYSDHR scheduled a Pre-Hearing Settlement Conference, and Defendants' counsel confirmed his planned attendance, making the Division and Plaintiff understand that Defendants intended to negotiate the settlement, since the parties were advised to attend with full authority to settle.

148.      Upon Defendants' counsel request, the conference was postponed until April 26, 2023. In the meantime, in the bankruptcy court, Defendants rushed through the expedited Subchapter V process, and proposed the reorganization plan concealing the NYSDHR proceedings.

149.      During the settlement conference on April 26, 2023, the Division's counsel assigned to Plaintiff presented extensive medical documentation of Agra's physical and emotional injuries resulting from workplace sexual harassment, as a ground for a settlement

---

61  See *Id.,* Docket No. 7, Dolci Declaration ¶ 4, 12.

62  See *Id.* Docket No. 27.

63  See Plaintiff's Adversary Proceeding complaint In re: Major Model Management, Inc, currently in appeal from the dismissal order as to the Debtor from August 18, 2023 (In Re: Major Model Management Inc. (1:23-cv-07657-VEC)).

offer. However no settlement offer was made to Agra. Defendants' counsel however used the conference to further intimidate Agra.

150.       Upon failed settlement mediations, the Division's administrative judge moved to put the case on the public hearing schedule, but was prevented by Defendants' counsel, who only then informed the Division about pending Chapter 11 bankruptcy case and requested that Agra's claims were barred from being asserted any further.

151.       In result of Defendants' bankruptcy scheme, Major Model Management's confirmation plan was fraudulently confirmed on June 28, 2023. Less than 10 creditors, out of almost 900, cast ballots.

152.       On June 26, 2023, Plaintiff Pro Se timely filed the Adversary Proceedings complaint in the Bankruptcy Court[64], where he objected to the Debtor's discharge (including the count seeking to dismiss the Debtor's bankruptcy case pursuant to 11 U.S.C. § 1112(b) because of "bad faith" filling) and requested determination of nondischargeability of Agra's claims, pursuant to 11 U.S.C. §§ 523(a)(4), 523(a)(6), and § 523(a)(2)(a)[65].

153.       On June 27, 2023, Defendants, through the Debtor's counsel, continued to fraudulently conceal the NYSDHR administrative proceedings and probable cause determination against the Debtor, and discredited Plaintiff's Adversary Proceedings to Judge Glenn during the confirmation hearing [66].

154.       In the result of the fraudulent process, Major Model Management Inc. abused the debt limit of Subchapter V of $7.5 million, and fraudulently obtained a relief for a total of $11,421,855 debts on June 28, 2023[67]. Out of over 800 creditors, majority of them, unpaid models, will never be able to recover their debt. Defendants however rushed to secure payment towards those, who helped in obtaining Major Model Management's fraudulent discharge, including the significant sum of over $120,000 legal fees.

*(3.6) Defendants threatened Plaintiff with "all steps" to prevent him from filing this lawsuit*

---

64  Plaintiff was directed to the bankruptcy court to protect his rights by the NYSDHR administrative judge letter from May 5, 2023.
65  Currently in appeal from the dismissal order as to the Debtor from August 18, 2023 (In Re: Major Model Management Inc. (1:23-cv-07657-VEC)).
66  See Conference Official Transcript, Main Case No. 22- 101691, Docket No. 177.
67  Confirmation plan Order. Docket 161

155.     On May 1, 2023, Plaintiff requested administrative convenience dismissal to proceed with his New York State sexual harassment and retaliation claims against Defendant in this court, together with sex trafficking and racketeering claims[68].

156.     Upon Plaintiff's request delivered to the judge and the other party,  on May 1, 2023, Plaintiff was contacted off-court by email by Defendants' counsel. The email accused Plaintiff of a crime of defamation and extortion, threatening Plaintiff that the lawyer "[had been] *authorized to take all steps"*, if Plaintiff won't "*confirm in writing"* that he retracts his claims.

157.     Defendants' letter caused Plaintiff to believe that Plaintiff may face criminal prosecution if he proceeds in court with Plaintiff's claims. In addition, because Sussmane did not specify which "steps' would be taken against Plaintiff, Plaintiff expected the worst, including facing the imminent threat of physical harm from "the authorized" individuals.

158.     Fearing for his and his wife's life, on the evening of May 1, 2023, Plaintiff went to the 19 Precinct police station to report the content of Sussmane's letter. The police officers there told Plaintiff that the lawyer wanted to scare Plaintiff and advised Plaintiff to contact the Division's counsel.

159.     To achieve success in fashion modeling was Plaintiff's dream, pursued with passion and determination for 20 years. Facing his otherwise promising modeling career being derailed in the way described above has been detrimental to Plaintiff's health and caused him and his family enormous harm, including psychological symptoms extensively documented by the medical record. Plaintiff elects to seek justice of this court to hold Defendants accountable for their wrongs and to prevent other models in the fashion industry to ever experience anything similar to what happened to Plaintiff.

## IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION:

### Sex Trafficking under 18 U.S.C. § 1591, *et seq. against Tacchini*

160.     Plaintiff incorporate by reference all preceding paragraph, as if fully set forth herein.

161.     The statute of limitations for violations of the sex trafficking statute is 10 years[69].Plaintiff was affected within the 10 years prior to filing suit.

---

68   As per judge's letter from May 5, 2023, Plaintiff's complaint was not dismissed
69   *See* 15 U.S.C. § 1595

162.     Tacchini, engaged with Plaintiff in commercial sex act under Section 1591(e)(3), because the instances of sexual assault and sexual harassment from Tacchini towards Plaintiff alleged in this complaint, involved "actual sexual contact between [Tacchini's] mouth and [Plaintiff's] genitals, or intent to obtain this contact.

163.     In violation of 18 U.S.C. § 1591, Tacchini knowingly, in or affecting interstate or foreign commerce, recruited, enticed, or solicited Plaintiff knowing that means of fraud, or coercion, or a combination thereof would be used to cause Plaintiff to engage in any sex act on account of which anything of value would be given to or received by any person.

164.     Tacchini's actions knowingly affected interstate or foreign commerce. In his capacity as *Major* employee and agent, Tacchini's work affected *Major* interstate and foreign commerce. In 2010, Tacchini recruited Plaintiff for engaging in foreign commerce with *Major*. Tacchini regularly traveled to New York for business to scout models and entice them to engage in doing business with *Major* and *Major*'s clients. In 2017 and 2019, Tacchini traveled to New York where (and while) he met with Plaintiff and promised to Plaintiff securing for him a modeling contract with *Major Models New York* and/or help Plaintiff to advance his business with *Major Models New York, Major Models Milan and* Major Miami LLC. In result of his action of securing a contract for Plaintiff, Tacchini caused Plaintiff to travel from his home (Rio de Janeiro, Brazil) to New York for doing business with *Major*. Tacchini engaged in electronic communications in foreign commerce to arrange above mentioned meetings. For all deals promised, Plaintiff's advertising material and the results of Plaintiff's modeling services were to be distributed internationally, on behalf of *Major Models Milan, Major Models New York*, and Major Miami LLC, via an Internet web protocol and Instagram.

165.     Tacchini recruited, enticed, or solicited by any means Plaintiff. In spring 2010, Tacchini asked Plaintiff to work in *Major Models Milan,* and promised him a work visa. The opportunity to work there was a great chance for Plaintiff. Plaintiff was not aware of Tacchini's predatory behavior because Plaintiff was new in *Major*, and was not interested in sexual relationship with Tacchini. In 2017, Tacchini recruited and solicited Plaintiff by promise of modeling contract with *Major Models New York*. In 2019, Tacchini enticed and solicited Plaintiff by promises to advance his business with *Major Models New York and* Major Miami LLC. Between 2017 and 2019, Tacchini enticed or solicited Plaintiff by promising him to advance his career and secure job opportunities with *Major* for Plaintiff.

166.     Tacchini knew he would use fraud, physical force or coercion on Plaintiff for a sexual encounter. In summer 2010, in his role as Plaintiff's booker, Tacchini invited Plaintiff to the separate room to meet with him under the guise of taking measurements. Taking measurements was the

activity contracted in the modeling job, and Plaintiff felt compelled to do it. In 2017, Tacchini invited Plaintiff to meet with Plaintiff in the hotel under the guise of business meeting to help Plaintiff to obtain recommendation to *Major Models New York* needed to secure Plaintiff's modeling contract with *Major Models New York.* In 2019, Tacchini invited Plaintiff to meet Tacchini in person under the guise to assist Plaintiff in his modeling career by working with *Major Models New York*, *Major Models Milan*, and Major Miami LLC.

167.     Tacchini was well aware that (i) securing work visa for Plaintiff in 2010 was of significant commercial value for Plaintiff, (ii) taking Plaintiff's measurements to advertise him to the clients was indispensable to contract jobs for Plaintiff which had significant commercial value for Plaintiff, (iii) securing Plaintiff's contract with *Major* in 2017, and (iv) helping him to secure jobs in 2019, were both of significant commercial value to Plaintiff. Tacchini used Plaintiff's representation of this value, or the prospective use of his influence on Plaintiff's behalf, to recruit and entice Plaintiff to private locations, including the agency's separate room, and Tacchini's hotel room, where he would perform sex acts.

168.     Tacchini's role as a head booker in *Major*, his power in securing *Major Models New York* modeling contract for Plaintiff and, for opportunities in securing contracts in *Major Models Milan*, and Major Miami LLC, and his other services to secure job assignments and formal assistance for Plaintiff, were successful in enticing Plaintiff to a separate room in the agency or to his hotel room. Plaintiff felt compelled to attend the meetings – and to comply with Tacchini's acts towards Plaintiff up to and until Tacchini used coercion and/or forceful restrain or Plaintiff's state of being under the influence of alcohol or being unconscious while sleeping, to prevent Plaintiff from refusing further or complaining afterwards, because of the work benefits Plantiff would receive from Tacchini's role as a head booker in *Major* and his power in the fashion industry

169.     There was a connection between commercial value and sex act. In 2010, Tacchini arranged for *Major*'s sponsorship of Plaintiff's visa as a payment for Plaintiff's compliance during the sex act and Plaintiff's subsequent silence about the event. Following sex acts in 2017, Tacchini arranged the interview for Plaintiff with *Major Models New York* Vice President, which resulted in Plaintiff's modeling contract with *Major Models New York and Major Models Milan*. There was quid pro quo, conferring of a real benefit, and actual value was provided. Between 2017 and 2019, Tacchini was constantly promising to Plaintiff to advance his business with *Major Models New York, Major Models Milan* and Major Miami LLC.

170.     Tacchini knew that the promise to arrange visa for Plaintiff, the promise to arrange for Plaintiff the interview for the modeling contract and the promise of job assignments and career

advancement for Plaintiff, would entice Plaintiff into the private locations inside *Major Models Milan*, and to his hotel room in New York, and knew that once Plaintiff was there, Tacchini was in a position to force the sexual activity he desired. Tacchini used coercion, physical restrain or Plaintiff's state of being under the influence of alcohol or sleeping, to restrain Plaintiff to perform the sexual act. In 2010, Tacchini physically grabbed Plaintiff's hips and held it, preventing his escape while he performed oral sex on him. On another occasion, Tacchini pinned Plaintiff's body against the wall and went down to perform oral sex on him while Plaintiff was under the influence of alcohol which prevented him from counterattacking him. On another occasion, Tacchini hugged Plaintiff and held him with both arms against Plaintiff so that he could kiss Plaintiff.

171.     Because of Tacchini's power to advance Plaintiff's career, to assign jobs for Plaintiff, to arrange a modeling contract for Plaintiff, Plaintiff could not refuse Tacchini's advances from the fear of substantial harm which Plaintiff would face. Plaintiff could not refuse Tacchini's advances in New York in 2017 because Plaintiff felt that modeling contract secured by Tacchini's assistance could be Plaintiff's last chance to advance Plaintiff's modeling career.

172.     By Tacchini's influence over Plaintiff's job assignment, his visa, his modeling contract and his career advancements, and because modeling jobs  constituted Plaintiff's main source of income, Tacchini compelled Plaintiff into position of involuntary servitude and enslaved Plaintiff. Tacchini had intention of following through with promise of helping Plaintiff only if Plaintiff would totally comply.

173.     Tacchini had been expecting instant sexual gratifications from Plaintiff for any of Tacchini's expected assistance to Plaintiff. Tacchini expected Plaintiff's compliance, and once he refused, Tacchini withdrew his assistance.

174.     Plaintiff's reasonable expectation of receiving the above mentioned benefits was based on Tacchini's repeated representations. It was reasonable for Plaintiff to expect Tacchini would follow through on his promises. Tacchini's promises were plausible for Plaintiff, as were made from a powerful and influential person in *Major* and the fashion industry. Tacchini was a head booker in the agency and was influential for Plaintiff's jobs prospects and his career. The value of these things for a young model from Brazil like Plaintiff was career-making and life-changing.

175.     Tachini's battery of Plaintiff caused harm, including physical, mental, and/or emotional harm to Plaintiff. Tacchini's conduct was the direct and proximate cause of Plaintiff's past and future substantial damages, including significant pain and suffering, lasting psychological and pecuniary harms, loss of dignity, and invasion of privacy.

34

## SECOND CAUSE OF ACTION

**Participation in a Sex Trafficking Venture in Violation of 18 U.S.C. § 1591, *et seq. against Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc., Dolci and Shahrik***

176.     Plaintiff incorporate by reference all preceding paragraphs, as if fully set forth herein.

177.     The statute of limitations for violations of the sex trafficking statute is 10 years. 15 U.S.C. § 1595. Plaintiff was affected within the 10 years prior to filing suit.

178.     18 U.S.C. § 1595 provides in pertinent part that an individual who is a victim of sex trafficking under 18 U.S.C. § 1591 may bring a civil action against "any person whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter."

179.     First, as set forth above, Tacchini engaged in acts in violation of 18 U.S.C. § 1591.

180.     Gemide srl, Major Miami LLC, Mensboard Management Inc., Dolci, and Shahrik knowingly participated in Tacchini's venture in violation of  18 U.S.C. § 1591 by knowingly benefiting from, facilitating, and receiving value for, the venture in which Tacchini traveled in foreign and interstate commerce, and used the means of foreign and interstate commerce, to recruit or entice male models into forced or coerced sexual encounters on the promise of modeling jobs, with knowing, or in reckless disregard of the facts, that Tacchini would defraud, force and/or coerce sexual encounters from Male models seeking to do business with Major Model Management Inc., Gemide srl and Major Miami LLC.

181.     Dolci, Shahrik, and other employees of Major Model Management Inc., Major Miami LLC, Mensboard Management Inc and Gemide srl, acting in the scope of their employment as Tacchini had directed, coordinated to form a venture that coerced, transported, and harbored Plaintiff, either with knowledge or in reckless disregard of the fact that Tacchini would use threats of force, means of force, and coercion to force plaintiff into commercial sex acts.

182.     Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc, Dolci and Shahrik knew, or was in reckless disregard of the facts, that it was the pattern and practice of Tacchini to travel in foreign and interstate commerce or use the means of foreign and interstate commerce, to lure/entice male models such as plaintiff into defrauded, forced or coerced pretextual meetings that would unbeknownst to plaintiff lead to forced sexual acts.

183.     Employees of Major Model Management Inc., Gemide srl, Major Miami LLC, and Mensboard Management Inc., including Shahrik and Dolci, knew from observation of Tacchini and from experiences of other Debtor's and Gemide srl's employees and models, as well as from

35

employees and models of other agencies that: (i) Tacchini was making sexually verbal remarks to male models in his booker capacities and/or (ii) Tacchini was taking models' measurements in one-on-one settings and/or (iii) Tacchini was capable of sexually attacking male models at work and/or (iv) Tacchini had a history of sexually attacking male models at work and or (v) Tacchini was socializing with selected male models at his private home location.

184.       Upon information and belief, the employees of Major Model Management Inc. and/or Gemide srl and/or Major Miami LLC and/or Mensboard Management Inc., including  Dolci and Shahrik, had been privy to multiple clams in which such acts were alleged in *Major*, including acts involving Tacchini prior to the alleged occurrences. Sexual molestation of male models in the agency from Tacchini was an open secret in the agency.

185.       Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc, Dolci and Shahrik actually knew, through Dolci, Shahrik and other employees, that it was participating in a particular sex-trafficking venture—i.e., the coercive Tacchini sex-trafficking venture outlined above, and their knowledge went far beyond having an abstract awareness of sex trafficking in general.

186.       Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc, Dolci and Shahrik did not simply fail to adequately detect signs of Tacchini's sex trafficking; they did detect multiple signs of Tacchini's coercive sex-trafficking venture and continued to participate in the venture. They knew that the venture was on-going, which was why they resolved to covering-up Plaintiff's complaint and intimidated the victim and the witnesses.

187.       Despite the actual or constructive knowledge, Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc, Dolci and Shahrik continued to pay for and/or facilitate Tacchini's usage of the means of foreign and interstate commerce and his interstate and foreign trips, including to New York in 2017 and 2019, where Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc, Dolci and Shahrik knew, or was in reckless disregard of the facts that, he would encounter aspiring men seeking to do business with Major Model Management Inc., Gemide srl, Major Miami LLC, and Tacchini would seek to coerce, defraud and/or force sexual activity against these men in the guise of legitimate modeling work.

188.       Debtor's and Gemide srl's employees, executives or agents, including Shahrik and Dolci, actively participated in the above described scheme and worked with Plaintiff on these modeling projects.

189.       Major Model Management Inc., Mensboard Management Inc. and Shahrik aided Tacchini's sexual exploitation of Plaintiff in New York, while in 2017 Skahrik contracted Plaintiff in

New York, brought him from Brazil to New York and between 2017 and 2020 harbored Plaintiff for Tacchini in New York with the intent of exploitation and financial benefit.

190.     Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc, Dolci and Shahrik and other employees aided Tacchini's sexual exploitation of Plaintiff in New York under the directions from Tacchini, Dolci and Shahrik.

191.     This affirmative conduct of the Gemide srl, Major Miami LLC, Mensboard Management Inc, Dolci and Shahrik and other employees, was done knowing, or in reckless disregard of the facts that, Tacchini would use intimidation, force and coercion against male models such as plaintiff into the aforesaid commercial sex acts.

192.     Multiple Debtor's, Major Miami LLC's, Mensboard Management Inc.'s and Gemide's employees or executives, including Shahrik and Doli, participated in the recruitment or enticement of Plaintiff into a repeated victim of commercial sex acts, knowing full well what they were doing and what harm was coming to plaintiff by their actions and those of Tacchini.

193.     Tacchini's status in Major Model Management Inc.'s, Major Miami LLC, Mensboard Management Inc, and Gemide srl's organization gave him a power to influence Major Model Management Inc.'s, Major Miami's, Mensboard Management Inc.'s and Gemide srl's employees and executives, including Shahrik and Dolci, to serve in humiliating and demeaning roles that required them to facilitate and support his sexual activity with models such as Plaintiff at the time of the sexual assault incidents described before.

194.     Among the concrete steps that Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc, Dolci and Shahrik took to aid and participate in the Tacchini sex-trafficking venture, was the regular annual assignment of Tacchini to attend a business event in New York, where Tacchini's primary job was scouting, i.e., recruiting and enticing young teenager male models to work with Major Model Management Inc. and/or Gemide srl and/or Major Miami LLC, in reckless disregard of the tools and modus operandi Tacchini would use to recruit them. Enabling him to travel for scouting was affirmative conduct that caused Gemide and Dolci to receive benefits.

195.     Among the concrete steps that Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc, Dolci and Shahrik took to aid and participate in the Tacchini sex-trafficking venture was to salience the complaints about Tacchini, and his continued employment.

196.     Among the concrete steps that Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc, Dolci and Shahrik took to aid the Tacchini sex-trafficking

enterprise was the company's failed policy around sexual harassment. This failure was not just passive facilitation, but a deliberate omission by Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc, Dolci and Shahrik. This omission was a specific act of concealment, which allowed Tacchini to continue his sex-trafficking venture through abusing models, which would have otherwise been prevented.

197.     By taking the concrete steps outlined above (along with the others alleged in this complaint), Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc, Dolci and Shahrik knowingly participated in sex trafficking and furthered the Tacchini sex-trafficking venture. The concrete steps above constituted taking part in the sex-trafficking venture and were necessary for its success. The concrete steps above constituted active engagement by Major Model Management Inc., Gemide srl, Shahrik, Gemide and Dolci in Tacchini's sex-trafficking venture.

198.     The reason that Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc, Dolci and Shahrik ignored numerous red flags about Tacchini and, upon information and belief, silenced and/or covered-up the previous complaints, was to receive financial benefits from Tacchini's continuous services and his sex-trafficking venture.

199.     Major Model Management Inc., Gemide srl, Shahrik and Dolci knowingly and intentionally benefited financially from, and received value for, their participation in the sex-trafficking venture, in which Tacchini, with their knowledge, or its reckless disregard of the fact, that Tacchini would use means of force, threats of force, fraud, coercion, and a combination of such means to cause Plaintiff, to engage in commercial sex acts.

200.     Each of Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc, Dolci and Shahrik benefited financially from their participation in Tacchini's venture because it ensured that Tacchini continued to scout, manage, advertise and book male models, ensuring that Major Model Management Inc., Gemide srl, Major Miami LLC, and Mensboard Management Inc. continued to make money or receive financing, Dolci's investments (direct or through his respective companies) continued to make money, Dolci and Shahrik continued to receive the social benefits and power within the fashion industry, Shahrik continued to receive her paychecks, bonuses and other incentives, and Mensboard Management Inc. and Shahrik continued to make money with Major Model Management Inc..

201.     Tacchini provided specific benefits to Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc, Dolci and Shahrik because of their facilitation of Tacchini's sex trafficking venture. Major Model Management Inc., Gemide srl, Major Miami LLC,

Mensboard Management Inc, Dolci and Shahrik benefited from Tacchini's sex trafficking of the particular class of models, i.e., "mulatos", which Tacchini fancies, and which were "easy to manipulate" due to their foreign status and impoverished upbringings. These models are considered to be "exotic" in the fashion industry.  Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc, Dolci and Shahrik could use and indeed used the Tachini's models' advertising materials, such as their pictures, in the advertising materials of their agency, to create and maintain the image of the model agency as forward-thinking, advanced, and applying diversity and inclusion.

202.     Tacchini provided specific benefits to Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc, Dolci and Shahrik because of their facilitation of Tacchini's sexual misconduct. In the organization with favoritism policy, where Tacchini had power resulting from his long-term employment, position and alliance with Dolci, and where other and/or new bookers could get easily fired, Tacchini's sex trafficking assistants and enablers were receiving benefits of continuous employment for being salient about Tacchini's sex trafficking venture.

203.     Another specific benefits which Tacchini provided to Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc, Dolci and Shahrik because of their facilitation of Tacchini's sex trafficking venture was the revenue brought to the agency by the modeling services of Tacchini's models, including Plaintiff. Even when Plaintiff did not get any jobs assignments, Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc, Dolci and Shahrik continuously benefited from (i) Plaintiff's advertising materials, and (ii) from not having to invest in Plaintiff, the investment, such as travel costs, accommodation, salary of a booker, photoshooting session etc., which the agency otherwise would have to bear to develop a new model.

204.     Once Plaintiff filed his complaint, Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc, Dolci and Shahrik continued to participate in Tacchini's sex trafficking venture and resolved to the complaint cover-up and intimidation scheme to prevent the collapse of their fortunes built on participation in Tacchini's sex trafficking venture.

205.     Tacchini secured the complicity of Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc, Dolci and Shahrik in his sex trafficking venture as a condition of his continued, and ongoing, employment.

206.     Major Model Management Inc.'s, Gemide srl's, Tacchini's, Shahrik's, Dolci's, Major Miami LLC's and Mensboard Management, Inc'.'s actions involved fraud while acting in a fiduciary duty, and/or caused willful and malicious injury to Plaintiff.

39

**THIRD CAUSE OF ACTION**

**Violation of The New York Services for Victims of Human Trafficking, N.Y. Servs. Law § 483-bb(c) against all Defendants**

207.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

208.    Plaintiff is a victim of sex trafficking within the meaning of N.Y. Penal Law § 230.34 and is therefore entitled to bring a civil action under N.Y. Soc. Serv. § 483-bb.

209.    The Defendants' acts and omissions, taken separately and/or together, as outlined above, constitute a violation of N.Y. Soc. Serv. § 483-bb. Specifically, Defendant Massimo Tacchini perpetrated sex trafficking of Plaintiff by requiring him to engage in forced sexual acts in the State of New York, and all Defendants benefited from Tacchini's venture by holding Plaintiff, a model signed with Defendant Major Model Management Inc. and Defendant Gemide SRL, captive to Tacchini's demands and desires. At all relevant times, Defendants participated in and facilitated the harboring and transportation of Plaintiff for purposes of sex induced by force, fraud, or coercion.

210.    The Defendant Corporations have financially and otherwise benefited as a result of these acts and omissions by keeping Tacchini, dangerous sexual predator in Defendant Corporations, satisfied. They benefited from facilitating his behavior to the extent it kept Tacchini, and, among others, the Major mogul Dolci happy, and kept Plaintiff obedient to Tacchini's, Shahrik's and Dolci's and the Corporations' interests.

211.    As a direct and proximate result of Defendants' unlawful conduct as alleged hereinabove, Plaintiff has suffered physical injury, severe emotional distress and anxiety, humiliation, embarrassment, post-traumatic stress disorder, economic harm and other consequential damages.

212.    Plaintiff also seeks reasonable attorneys' fees as provided under N.Y. Soc. Serv. § 483-bb.

**FOURTH CAUSE OF ACTION**

**Racketeering Activity in Violation of 18 U.S.C. § 1962**

*against Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc., Shahrik and Dolci*

213.    Plaintiff incorporate by reference all preceding paragraphs, as if fully set forth herein.

*(1) The association in fact*

214.    Major Model Management Inc., Mensboard Management Inc, Major Miami LLC, Shahrik, Tacchini and Dolci are 'persons' within the meaning of 18 U.S.C. § 1961(3) who conducted

40

the affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

215.     The Tacchini Sexual Enterprise is an association-in-fact within the meaning of 18 U.S.C. § 1961(4) consisting of (i) Major Model Management Inc. and its parent Gemide srl, and its affiliated companies Major Miami, Mensboard Management Inc., Tacchini, Shahrik, Dolci, and other Debtor's, Major Miami LLC's, Mensboard Management Inc., and Gemide srl's employees and officers; (ii) the Lawyers Team,  defined as third parties lawyer companies Lonati Studio Legale in Milan, Italy, providing services "aimed at preventing the criminal risks associated with corporate activities", Dunning Rieveman & Macdonald LLP, providing services to clients "facing litigation or arbitration in the United States and other venues" and McCue Sussmane Zapfel & Cohen P.C. in New York, providing services for "clients in the areas of entertainment, corporate and high net worth families", and other advisors to Major Model Management Inc., Gemide srl, Shahrik, Tacchini and Dolci whose identities are currently unknown, who conceived and/or advised on and implemented the duplicitous, fraudulent and intimidation tactics approved by Debtor and Gemide srl, Tacchini, Shahrik, Dolci,; (iii) the Major's IT Team, consisted of Debtor's and Gemide srl's employees, who implemented through wire the Witness Intimidation scheme conceived by Major Model Management Inc. and Gemide srl, Tacchini, Shahrik, Dolci and/or the Lawyers Team; and other fashion industry members and other unnamed co-conspirators.

216.     The Defendant 'persons' are distinct from the Tacchini Sexual Enterprise, which span across four legal entities and involves third parties.

217.     The Tacchini Sexual Enterprise is open-ended continuity scheme, which has been engaging in pattern of racketeering activity for over a decade, and is coupled with a threat of future criminal conduct.

### *(2) The common purpose*

218.     The Tacchini Sexual Enterprise falls within the meaning of 18 U.S.C. § 1961(4) and consists of a group of "persons" associated together for the common purpose of: (i) associating with Tacchini in order to profit from his success and that of the models he was associated with, while associating for the common purpose of (a) sex trafficking and/or participating and/or benefitting from a venture that engages in sex trafficking; (b) facilitating Tacchini's common practice of using his position of power to harass and assault male models; (c) harassing, threatening, intimidating, extorting, and misleading Tacchini's victims (including Plaintiff) to prevent the reporting, disclosure, or prosecution of Tacchini's sexual misconduct and Tacchini's, Shahrik's, Dolci's, Major Model

41

Management Inc.'s and Gemide srl's retaliation; and (d) interrupting the course of justice to prosecute and/or otherwise find civil liability of their wrongs.

*(3) The roles of the participants*

219.      The Tacchini Sexual Enterprise Participants determined who the members of the Tacchini Sexual Enterprise would be, and assigned each member of the enterprise a task or tasks to fulfill the common purpose of profitability from Tacchini and *his* models.

220.      Dolci founded Gemide srl in Milan, Italy, in late 1980' as a model agency, branded as Major Models. In 1994, Dolci hired Tacchini, and since then Tacchini advanced to the position of a head booker of the male model's division in the *Major Models Milan*.

221.      In 1999, Dolci opened *Major Models* branch in New York, as Gemide srl's subsidiary (Major Model Management Inc.), and from 2017, Dolci is the company's President and Shahrik is the company's Vice-President.

222.      In 2019, Dolci opened another US-based branch, Major Miami LLC, and Dolci and Shahrik are the company's officers. At all relevant time, Major Model Management Inc. hired Mensboard Management Inc. to provide consultancy services for Major Model Management Inc.'s operations.

223.      Major Model Management Inc., Major Miami LLC, Mensboard Management Inc., Shahrik, Dolci and Gemide srl had a tight business relationship, and their main business model, upon information and belief, consulted with Mensboard Management Inc., was to charge commission fees from the payments for the modeling services performed by the models from Major Model Management Inc.'s, Major Miami LLC, and Gemide's to the companies' clients. Models were scouted and had their jobs assigned and contracted through their assigned bookers, Major Model Management Inc., Major Miami LLC and Gemide srl advertised their models for the fashion industry clients, worldwide, including the clients doing business in Milan, New York and Miami.

224.      From 2009 to 2020 Plaintiff was represented by Major Model Management Inc. and/or Gemide srl and aspired to be represented by Major Miami LLC, and Tacchini was Plaintiff's booker.

225.      For over last 20 years, Tacchini traveled annually to New York for business, which included scouting of new male models.

226.      Throughout the time period of over a decade, Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management, Dolci, Shahrik and other employees and officers of Major Model Management Inc., Mensboard Management Inc., Major Miami LLC and Gemide srl – each allowed Tacchini to conduct business at their offices and other related events

under their control, were aware of his misconduct and agreed to conceal it and harbored Tacchini's victims so that they could continue to benefit from their lucrative collaborations with Tacchini.

227.    When they joined the Tacchini Sexual Enterprise, the Lawyers Team targeted Plaintiff as Tacchini's victim, to conceive and/or advise on and implement the duplicitous, fraudulent and intimidation tactics aimed at silence Plaintiff.

228.    When they joined the Tacchini Sexual Enterprise, the IT Team performed the Witness Intimidation scheme, to silence Tacchini's other victims.

229.    All of the participants reported on their activities to Tacchini and/or to Dolci.

### *(4) Pattern of racketeering and predicate acts*

230.    Major Model Management Inc., Gemide srl, Tacchini, Dolci and Shahrik have conducted and participated in the affairs of the Tacchini Sexual Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1) and 1961(5), which includes (i) multiple instances of obtaining a victim for the purpose of committing or attempting to commit aggravated sexual abuse in violation of 18 U.S.C. §§ 1590 and 1591 as described above, (ii) multiple instances of tampering with a victim and witnesses in violation of 18 U.S.C. § 1512, (iii) multiple instances of mail and wire fraud as described throughout and below, (iv) multiple instances of fraudulent concealment and false representation during the bankruptcy process.

### *(5) Predicate acts of sex trafficking*

231.    Human trafficking is the fastest-growing criminal enterprise on the planet. Millions of people are living without freedom, tricked or sold into sex trafficking, with no foreseeable way out.

232.    Between 2009 and 2020, Plaintiff was sex trafficked by Defendants in the meaning of 18 U.S.C. § 1591, and was the victim of Defendants' sexual assault and sexual harassment and victim tampering within the meaning of NY Penal Law § 130.00(3), § 155.05(e), § 195.05, § 130.40 and §215.10, and has been intimidated by Defendants, up until his year, for opposing his participation in the sex trafficking venture described above.

233.    Wherefore, to detail the predicate acts of sex trafficking, Plaintiff incorporates by reference the preceding paragraphs 160-175 and paragraphs 176-206 as if fully set forth herein.

### (6) Predicate acts of tampering with a victim and witnesses

234.    Next, Major Model Management Inc., Gemide srl, Major Mialn LLC, Mensboard Management Inc., Tacchini, Dolci and Shahrik, The Lawyers Team and the Major's IT Team tampered with one or more victims in violation of 18 U.S.C. § 1512, each instance of which constitutes a predicate act.

235.    In 2012 in Milan, Tacchini, in person, used "the threat of physical force against [Plaintiff] or attempted to do so, with intent to (…) hinder, delay, or prevent [Plaintiff]" from reporting Tacchini's 2010 sexual attack on Plaintiff in Major Milan agency to the law enforcement officer in Milan.

236.    In 2019 in New York, Tacchini, in person, "knowingly use[d] intimidation, threaten[ed] or corruptly persuade[d] [Plaintiff], or attempt[ed] to do so, or engage[d] in misleading conduct toward [Plaintiff], with intent to (…) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense", i.e., Tacchini's 2017 battery and Tacchini's most recent battery in 2019, in violation of 18 U.S.C. § 1512(b)(3).

237.    Between September and October 2020, Major Model Management Inc., Gemide srl and Dolci through wire and emails "knowingly use[d] intimidation, threaten[ed] or corruptly persuad[ed] [Plaintiff] or attempt[ed] to do so, or engage[d] in misleading conduct toward [Plaintiff], with intent to (…) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense", i.e., a pattern of Tacchini's sexual misconduct towards Plaintiff between 2010 and 2019, in violation of 18 U.S.C. § 1512(b)(3).

238.    In October 2020, Tacchini through wire, "knowingly use[d] intimidation, threaten[ed] or corruptly persuad[ed] [Plaintiff] or attempt[ed] to do so, or engage[d] in misleading conduct toward [Plaintiff], with intent to (…) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense", i.e., a pattern of Tacchini's sexual misconduct towards Plaintiff between 2010 and 2019, in violation of 18 U.S.C. § 1512(b)(3).

239.    In December 2020, Major Model Management Inc., Gemide srl, Dolci and The Lawyers Team, through emails, "knowingly use[d] intimidation, threaten[ed] or corruptly persuad[ed] [Plaintiff] or attempt[ed] to do so, or engage[d] in misleading conduct toward [Plaintiff], with intent to (…) influence, delay, or prevent the testimony of any person in an official proceeding", i.e., the complaint Plaintiff filled with the New York State Division of Human Rights on Dec 1, 2020, and to "hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense", i.e., a pattern of Tacchini's sexual misconduct towards Plaintiff between 2010 and 2019, in violation of 18 U.S.C. §§ 1512(b)(1) and 1512(b)(3).

44

240.     In early 2021, Major Model Management Inc., Gemide srl, Dolci, The Lawyers Team and the Major's IT Team, through email(s), "corruptly (…) otherwise obstruct[ed], influence[d], or impede[d] any official proceeding or attempt[ed] to do so", by tampering with witnesses corroborating Plaintiff's complaint in the New York State Division of Human Rights investigation, in violation of 18 U.S.C. § 1512(c)(2).

241.     In May 2023, Major Model Management Inc., Gemide srl, Dolci, Shahrik and The Lawyers Team, through emails, used "the threat of physical force against [Plaintiff] or attempted to do so, with intent to (…) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense", i.e., sex trafficking and racketeering activity, in violation of 18 U.S.C. § 1512(a)(2)(C)

242.     Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc., Dolci, Shahrik and Tacchini "conspire[d] to committ any offense under this [18 U.S.C. § 1512] section", in violation of 18 U.S.C. § 1512(k).

### *(7) Predicate acts of mail and wire fraud*

243.     Dolci, Shahrik and Tacchini used the mails and wires for the transmission, delivery, or shipment of the following by the Major Model Management Inc., Gemide srl, Dolci, Shahrik and Tacchini or third parties that were foreseeable caused to be sent as a result of Major Model Management Inc.'s, Gemide srl's, Major Miami LLC's, Mensboard Management Inc.'s, Dolci's, Shahrik's and Tacchini' illegal scheme: (i) contracts between Dolci and/or the and/or Major Miami LLC and/or Mensboard Mangement Inc. and/or Major Model Management Inc. and/or Gemide srl and/or Shahrik and/or Tacchini and The Lawyers Team; contracts between Dolci and/or Major Model Management Inc. and/or Gemide srl and the Major's IT Team, and contracts between Dolci, Tacchini and Shahrik; (ii) wires and mails between Dolci and/or Tacchini and/or Shahrik and The Lawyers team on the subject of Tacchini's sexual activities, their victims, and concealing Tacchini's acts of sexual misconduct; (iii) payments to The Lawyers Team to perform their roles in the Victim and Witness Intimidation scheme; (iv) emails from Dolci and Tacchini to Plaintiff in connection with inquiries or meetings designed to elicit information from Plaintiff using deception, and to intimidate Plaintiff; (v) emails from Dolci, Tacchini and The Lawyers Team directed to Plaintiff to intimidate Plaintiff.

244.     Dolci, Shahrik and Tacchini utilized the interstate and international mail and wires for the purpose of furtherance of The Tacchini Sexual Enterprise.

45

245.     Dolci, Shahrik and Tacchini also used the Internet and other electronic facilities to carry out the scheme and conceal the ongoing fraudulent activities.

246.     Dolci, Shahrik and Tacchini also communicated by U.S. Mail, by interstate facsimile, and by interstate electronic mail with various other affiliates, regional offices, divisions, and other third-party entities in furtherance of the scheme.

247.     The electronic mail and wire transmissions described herein were made in furtherance of Major Model Management Inc.'s, Gemide srl's, Major Miami LLC's, Mensboard Management Inc.'s,  Dolci's, Shahrik's and Tacchini' illegal scheme and common course of conduct to deceive, entice, and recruit the models, including Plaintiff into Tacchini's sex trafficking venture, and to salience the victims, including Plaintiff, and include but are not limited to the following which occurred throughout the relevant time: (i) Tacchini used the mails and wires to contact Plaintiff to schedule the meetings with him, under the guise they were business meetings, when in fact, they were for the purpose of sex trafficking; (ii) in 2017 and 2019, Gemide srl paid via the wires for the hotel room in New York, where Tacchini stayed and assaulted Plaintiff; (iii) Tacchini used wires to request additional sexual favors from Plaintiff to be performed during the video chat between Tacchini and Plaintiff; (iv) Dolci and the Major's IT Team used the electronic mail to tamper with witnesses corroborating Plaintiff's complaint in the New York State Division of Human Rights investigation; (v) The Lawyers Team used wires and email in the New York State Division of Human Rights proceedings to intimidate Plaintiff.

### *(8) Predicate acts of the bankruptcy fraud*

248.     Under 18 U.S.C. §157, it is illegal to devise a scheme to defraud by filing a fraudulent or false bankruptcy petition or by making a false or fraudulent representation in relation to a bankruptcy petition.

249.     It is Debtor's responsibility to carefully check its books and records to properly identify its creditors and provide a due process in filing the Proof of Claim against Debtor's estate. Debtor's proper identification of its assets and liabilities is at the core of the bankruptcy code.

250.     Although Defendants were knowledgeable about Plaintiff's complaint, Defendants fraudulently concealed the NYSDHR administrative proceedings in its bankruptcy fillings, including its Statement of Financial Affairs.

251.     Between February 2022 and June 2023, Defendants took advantage of Subchapter V expedited procedures and lack of scrutiny to (i) made materially false representations and fraudulent concealment in the bankruptcy filings schedules, (ii) fraudulently concealed the bankruptcy process to the NYSDHR and falsely evoked the impression of willing to settle the case on the NYSDHR

46

forum in April 2023, (iii) put a stay towards scheduling the public hearing and (iv) refused to Plaintiff's his due process.

252.     In filing the petition, Defendants lacked a good faith reorganization purpose and used bankruptcy solely as a scorched earth tactic against a diligent creditor(s), as well as a refuge from the New York State Division of Human Rights jurisdiction into Plaintiff's sexual harassment and retaliation complaint.

253.     Defendants fraudulent concealment caused misrepresentation about Debtor's financial affairs to the Trustee, the court and the creditors. In result, the confirmation plan was procured by fraud.

### *(9) Affected interstate and international commerce*

254.     The Tacchini Sexual Enterprise engaged in and affected interstate and international commerce, because, *inter alia*, Major Model Management Inc., Major Miami LLC and Gemide srl are modeling agencies who conduct interstate and international business with Major Model Management Inc.'s, Major Miami LLC's and Gemide's clients, the Mensboard Management Inc., Major Model Management Inc.'s, Major Miami's and Gemide srl's models, and Major Model Management Inc.'s, Major Miami LLC's and Gemide's employees, agents and officers, including Dolci, Shahrik and Tacchini.

255.     Major Model Management Inc., Gemide srl, Dolci, Major Miami LLC, Mensboard Management Inc., Shahrik and Tacchini do business in Italy, Europe and the US, contract models for multinational business clients for fashion, movie and television productions, and/or contract interstate and/or international third parties, the Tacchini Sexual Enterprise Participants, and other co-conspirators for the purpose of furtherance of the scheme.

### *(10) Operation and management*

256.     Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc., Dolci, Shahrik and Tacchini each exerted some measure of control over the Tacchini Sexual Enterprise, and Major Model Management Inc., Major Miami LLC, Mensboard Management Inc., Gemide srl, Dolci, Shahrik and Tacchini participated on the operation or management of the affairs of the Tacchini Sexual Enterprise.

257.     Within Tacchini Sexual Enterprise, there was a common communication network by which co-conspirators shared information on a regular basis. The Tacchini Sexual Enterprise used this common communication network for the purpose of enabling Tacchini's sexual activities.

258.     Each participant in the Tacchini Sexual Enterprise had a systematic linkage to each other participant through corporate ties, contractual relationships, financial ties, and the continuing coordination of their activities. Through Tacchini Sexual Enterprise, Major Model Management Inc., Gemide srl, Dolci, Major Miami LLC, Mensboard Management Inc., Shahrik and Tacchini and their co-conspirators functioned as a continuing unit with the purpose of furthering the illegal scheme and their common purposes.

259.     To achieve their common goals, Major Model Management Inc., Major Miami LLC, Mensboard Management Inc., Gemide srl, Dolci, Shahrik and Tacchini hid from the general public the unlawfulness of Tacchini's conduct, and suppressed and/or ignored warnings from third parties about his conduct.

260.     Defendants' scheme and the above-described racketeering activities amounted to a common course of conduct intended to cause Plaintiffs and others to hide and conceal Tacchini's conduct. Each such racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting similar victims, including Plaintiffs. Defendants' fraudulent activities are part of their ongoing business and constitute a continuing threat to Plaintiffs' property.

261.     The pattern of racketeering activity alleged herein and Tacchini are separate and distinct from each other. Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc., Dolci, Shahrik and Tacchini engaged in a pattern of racketeering activity alleged herein for the purpose of conducting the affairs of the Tacchini Sexual Enterprise.

### (11) RICO injury

262.     Plaintiff had been injured in his property and business by reason of these violations.

263.     First, there was a sudden decline in jobs assigned to Plaintiff during the period of corrupt activity. Starting from 2012, Plaintiff's otherwise flourishing and promising modeling career was causally interrupted by the event when Plaintiff found himself in the middle of Tacchini Sexual Enterprise while Tacchini intimidated Plaintiff and forced him into salience. Plaintiff has since seen a 90% drop in his modeling jobs.

264.     The pattern of racketeering activity alleged herein caused a decade-long and concrete damage to Plaintiff's business. There was a near 100% of the average model income gap between the wages Plaintiff actually received during the period of corrupt activity of Tacchini Sexual Enterprise and the wages Plaintiff would have received but by the alleged misconduct.

265.     Second, Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc., Dolci, Shahrik and Tacchini, through their corrupted activity of associating in fact

48

with Tacchini Sexual Enterprise, interfered with Plaintiff' current and prospective contractual relations, because Plaintiff lost modeling employment, employment opportunities, contracts and contractual opportunities. In other words, Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc., Dolci, Shahrik and Tacchini own to Plaintiff his entire 10-year long modeling career.

266.     Plaintiff suffered injury to his property as a result of the racketeering activity, including but not limited to: (i) the costs of moving his center of living to and from the location contracted for him by the corrupt activity of Tacchini Sexual Enterprise; (ii)  the premium processing of Plaintiff's O-1 visa and the expenses of the law firm preparing the documents in the process and a 3-year long costs of living in New York he had to bear out of pocket while contracted by the corrupted activity of Tacchini Sexual Enterprise; (iii) Plaintiff's investments in his modeling career while contracted by the corrupt activity of Tacchini Sexual Enterprise, including a photoshooting with Max Pappendieck in 2019, subsequently used by Major Model Management Inc. and Gemide srl in their advertising material; (iv) legal costs associated with the official inquiry necessary in lieu of alleged criminal charges against him in Milan.

267.     Had members of the Tacchini Model Sexual Enterprise not been complicit and had they revealed instead of concealed Tacchini's predatory behavior, Plaintiff would not have been injured. Thus, Plaintiff's' injuries were directly and proximately caused by Defendants' racketeering activity, as described above.

268.     By virtue of these violations of 18 U.S.C. § 1962(c), Defendants are liable to Plaintiffs for three times the damages Plaintiffs have sustained, plus the cost of this suit.


**FIFTH CAUSE OF ACTION**

**Violation of 18 U.S.C. § 1962(D) by conspiring to violate 18 U.S.C. § 1962(C) *against Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Mana*gement Inc., Shahrik and Dolci**

269.     Section 1962(d) of RICO provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

270.     Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc., Dolci, Shahrik and Tacchini have violated section 1962(d) by conspiring to violate 18 U.S.C. § 1962(c). The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the section 1962(c) Enterprise described previously through a pattern of racketeering activity.

49

271.     As demonstrated in detail above, Defendants' co-conspirators, including, but not limited to the fact that Tacchini, Dolci, Shahrik, Major Model Management Inc., Major Miami LLC, Mensboard Management Inc.,Gemide srl, The Lawyers Team and the Major's IT Team have engaged in numerous overt and predicate fraudulent racketeering acts in furtherance of the conspiracy, including multiple instances of tampering with a victim or witness in violation of 18 U.S.C. § 1512.

272.     The nature of the above-described Defendants' co-conspirators' acts in furtherance of the conspiracy gives rise to an inference that they not only agreed to the objective of an 18 U.S.C. § 1962(d) violation of RICO by conspiring to violate 18 U.S.C. § 1962(c), but also were aware that their ongoing fraudulent acts have been and are part of an overall pattern of racketeering activity. At all relevant times, all Defendants and their co-conspirators were aware of the essential nature and scope of the Tacchini's Sexual Enterprise and intended to participate in it.

273.     As a direct and proximate result of Defendants' overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c), Plaintiff has been and are continuing to be injured in their business or property, as set forth more fully above.

274.     Defendants have sought to and have engaged in the violations of the above federal laws and the effects thereof detailed above are continuing and will continue unless injunctive relief prohibiting Defendants' illegal acts constituting a pattern of racketeering activity is fashioned and imposed by the Court.

### SIXTH CAUSE OF ACTION

### Conspiracy in Violation of 42 U.S. Code §§ 1985(2) and 1985(3) *against Tacchini, Shahrik, Dolci, Major Model Management Inc., Gemide SRL, Major Miami LLC, Mensboard Management, Inc.*

275.     Plaintiff incorporate by reference all preceding paragraphs, as if fully set forth herein.

276.     Section 1985(2) prohibits "two or more persons [to] conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws".

277.     Section 1985(3) prohibits "two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws".

50

278.     Defendants desired to deprive Plaintiff his rights to be free from slavery as a direct result of Plaintiff's being an alien, male, and of African decent. This is a "class of persons" subject to the protections of this Act.

279.     They act so by the coordinated actions of Dolci Exploitation Scheme enterprise, which included the actions of the third party participants, such as The Lawyers Team.

280.     The action was conspiracy, there participants achieved meeting of the minds, by setting up and reinforcing an onofficial policy and rules of practice in their agencies, which systematically discriminated Plaintiff, and his class of persons.

281.     Managed by Dolci actions, including intimidation and threats, were pattern and are ongoing, anc can be only stopped by punitive orders.

282.     Major Model Management Inc.'s, Gemide srl's, Tacchini's, Shahrik's, Dolci's, Major Miami LLC's and Mensboard Management, Inc'.'s discrimination caused harm, including sobstantial physical, mental, and/or emotional harm to Plaintiff.


### SEVENTH CAUSE OF ACTION

**Discrimination in Violation of 42 U.S.C. § 1981 *against Tacchini, Shahrik, Dolci, Major Model Management Inc., Gemide SRL, Major Miami LLC, Mensboard Management, Inc.***

283.     Plaintiff incorporate by reference all preceding paragraphs as if fully set forth herein.

284.     Pursuant to Section 42 U.S.C. § 1981(a), at all relevant times, Plaintiff was a person "within the jurisdiction of the United States", who "shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens (…)".

285.     Major Model Management Inc., Gemide srl, Tacchini, Shahrik, Dolci, Major Miami LLC and Mensboard Management, Inc. discriminated Plaintiff in "the making, performance, modification, and termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship".

286.     Plaintiff is of mixed race and of Brazilian nationality. Defendants knew about Plaintiff's African ancestry and about his nationality, and discriminated Plaintiff in the above mentioned manner because of his race.

287.     Among male models working with Tacchini, Tacchini self proclaimed himself as the *Arian Queen* and on multiple occasions while working with Plaintiff alluded to the history of black race oppression by referring to Plaintiff as Tacchini's *slave*.

288.     Tacchini targeted sexual attacks against Plaintiff, including the physical ones in 2017 and 2019, and demanded sexual favors from Plaintiff, including through the video call in late 2017 and early 2018, because of Plaintiff's race. Upon Plaintiff's refusal to Tacchini's advances in 2019, Tacchini intimidated Plaintiff, referring to his race and national origins as causal in determining Plaintiff's inferior position in bringing grievances, and said: "Who would believe a Brazilian model over 30 years old".

289.     Between 2010 and 2020, Plaintiff was discriminated because of his race and national origins in obtaining modeling job opportunities from Plaintiff's agents, i.e., Defendants because of being *enslaved* by Tacchini and coerced into Tacchini's sex trafficking venture.

290.

291.     Between 2010 and 2020, Tacchini, and other Defendants, intentionally lured Plaintiff into Tacchini's sex trafficking venture, because of Plaintiff's race, and conditioned the job offers and career advancements on Plaintiff compliance.

292.     The scheme was derogatory for Plaintiff and forced him into the position of involuntary servitude as a *slave* to Tacchini, who acted as a self-proclaimed *Arian Queen*.

293.     Upon refusing to participate in the scheme, Plaintiff was retaliated by Tacchini, and other Defendants, who in 2020 illegally terminated Plaintiff's modeling contract with Major Model Management Inc., and Gemide SRL, and refused Plaintiff the opportunity of the contract with Major Miami LLC.

294.     In result of Defendants' discrimination based on Plaintiff's race, Plaintiff did not have equal rights in pursuing his otherwise promising modeling career, which he would have if not for the discrimination.

295.     Between 2020 and 2023, Defendants continued to discriminate Plaintiff because of his race by systematically impeding Plaintiff's grievance process in relation to his sexual harassment complaint. In the emails sent to Plaintiff in 2020 and 2023, Defendants and their counsel intimidated Plaintiff with alleged criminal charges filed against Plaintiff in the Court of Milan, and taking "all steps" if Plaintiff did not retract his claims. Defendants, a group of white individuals senior to Plaintiff by at least 20 years, intentionally directed their intimidating actions towards Plaintiff, a half-black young male, with a strong retaliatory animus and disregard for the humane rules of typical social interactions in the society, typical for hate crimes.

296.     Major Model Management Inc.'s, Gemide srl's, Tacchini's, Shahrik's, Dolci's, Major Miami LLC's and Mensboard Management, Inc'.'s discrimination caused harm, including substantial physical, mental, and/or emotional harm to Plaintiff.

## EIGHTH CAUSE OF ACTION

**Civil battery *against Tacchini, Major Model Management Inc., Gemide srl, Major Miami LLC***

297.	Plaintiff incorporate by reference all preceding paragraphs as if fully set forth herein.

298.	Tacchini intended to commit an act of unwanted contact and/or caused imminent apprehension of such an act against Plaintiff. He did so by, *inter alia:* (i) *i*solating Plaintiff in closed quarters and dismissing any bystanders; and (ii) demanding or threatening sexual contact

299.	Tacchini did commit an unwanted contact with Plaintiff in a harmful or offensive manner, including but not limited to causing sexual contact between Tacchini and Plaintiff, within the meaning of the New York Penal Law § 130.00(3),

300.	Tacchini committed battery against Plaintiff: (i) twice in 2017, when he forcibly performed oral sex in Plaintiff while Plaintiff was incapable to consent because of being either physically helpless, mentally incapacitated because being under the influence of alcohol, or unconscious because of sleeping, (ii) in 2019, when he forcibly touched and groped Plaintiff.

301.	Tacchini's actions constituted sexual offenses as defined in Article 130 of the New York Penal Law, including but not limited to criminal sexual act in the third degree (§ 130.40), sexual abuse in the third degree (§ 130.55), sexual misconduct (§ 130.20), and forcible touching (§ 130.52).

302.	Plaintiff's claim for battery is thus timely under the Adult Survivors Act, N.Y. C.P.L.R. § 214-j.

303.	Tachini's battery of Plaintiff caused harm, including physical, mental, and/or emotional harm to Plaintiff. Tacchini's conduct was the direct and proximate cause of Plaintiff's past and future substantial damages, including significant pain and suffering, lasting psychological and pecuniary harms, loss of dignity, and invasion of privacy.

304.	Tacchini's conduct was committed within the scope of his employment at Gemide srl and within his work for or with Major Model Management Inc., Major Miami LLC, Gemide srl. A causal nexus existed between (i) Tacchini's grooming of male models (including Plaintiff) in the fashion industry to work with Gemide srl, Major Model Management Inc. and Major Miami LLC and (ii) his abuse of his power to coerce and batter those men. Each act of battery of Plaintiff was lured with the prospect of modeling jobs and/or contract in Major Model Management Inc. and/or contract with Gemide srl and/or contract with Major Models Miami, and Tacchini was foreseeable given, *inter alia*, the use of the employees of Major Model Management Inc. and/or Gemide srl and/or Major Models Miami to lure the victim and the commission of the acts at locations paid for by Dolci and Gemide.

305.     Tacchini's conduct is not so unusual or starling that it would seem unfair to include the loss resulting from it among other costs of Major Models's, Major Miami's and Gemide's businesses. Assaults in the modeling context of the "casting couch" are exactly why male models, members of the industry would expect modeling agency companies to take extra precautions to ensure that they are protected from abuse by a powerful men in the industry.

306.     Holding Major Model Management Inc., Major Miami LLC and Gemide srl liable furthers the policy goals of *respondeat superior*, including the prevention of future injuries and the assurance of compensation to victims, given that Plaintiff do not have separate remedies under Title VII because Plaintif was defined as independent contractor by Major Model Management Inc. and Gemide.

## NINTH CAUSE OF ACTION

**Assault *against Tacchini, Dolci, Shahrik, Major Miami LLC, Mensboard Management Inc.,***
***Major Model Management Inc., Gemide srl***

307.     Plaintiff incorporate by reference all preceding paragraphs as if fully set forth herein.

308.     Tacchini intended to cause apprehension of harmful or offensive conduct against Plaintiff. He did so by, *inter alia*: (i) isolating Plaintiff in closed quarters and dismissing any bystanders (b) demanding or threatening sexual contact, (iii) cornering, chasing, blocking, or otherwise using his heft to cause to fear that Tacchini had the ability to carry out his physical threats; and (iv) threatening harm to the careers and reputations of Plaintiff if he did not participate in such conduct, and (v) used intimidation, threat and corrupt persuasion towards Plaintiff with intend to hinder, delay, or prevent Plaintiff the communication to a law enforcement officer or judge of the United State about Tacchini's  battery and sex trafficking.

309.     Tacchini's actions did, in fact, cause Plaintiff to fear imminent harmful or offensive contact by Tacchini.

310.     Tacchini's conduct was committed within the scope of his employment at Gemide srl and within his work with Major Model Management Inc. and Major Models Miami. A causal nexus existed between (i) Tacchini's grooming of male models (including Plaintiff) in the fashion industry to work with Gemide srl, Major Model Management Inc. and Major Miami LLC and (ii) his abuse of his power to coerce and batter those men. Each act of battery of Plaintiff was lured with the prospect of modeling jobs and/or contract in Major Model Management Inc. and/or contract with Gemide srl and/or contract with Major Miami LLC, and Tacchini was foreseeable given, *inter alia*, the use of the

54

employees of Major Model Management Inc. and/or Gemide srl and/or Major Models Miami to lure the victim and the commission of the acts at locations paid for by Dolci and Gemide.

311.     Shahrik, Dolci, within the scope of their employment with Gemide srl, Major Model Management Inc., Mensboard Management Inc, Major Miami LLC, intended to cause apprehension of harmful or offensive conduct against Plaintiff. They did so by, *inter alia*: (i)   knowingly intimidated or threatened or corruptly persuaded Plaintiff or engage[d] in misleading conduct toward Plaintiff, with intent to hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to a pattern of Tacchini's sexual misconduct towards Plaintiff between 2010 and 2019, and (ii) used the threat of physical force against Plaintiff with intent to hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense", i.e., sex trafficking and racketeering activity.

312.     Shahrik's and Dolci's actions did, in fact, cause Plaintiff to fear imminent harmful or offensive contact by Shahrik, Dolci, Major Model Management Inc. or their agents.

313.     Shahrik's and Dolci's actions constituted offenses as defined by New York Penal Law §§ 215.10(a) and 155.05(e).

314.     Shahrik's and Dolci's conduct is not so unusual or starling that it would seem unfair to include the loss resulting from it among other costs of Major Model Management Inc.'s, Major Miami LLC's, Mensboard Management Inc.'s and Gemide's business. Assaults in the modeling context of the "casting couch" are exactly why male models, members of the industry would expect modeling agency companies to take extra precautions to ensure that they are protected from abuse by a powerful booker and/or executive.

315.     Holding Dolci, Major Model Management Inc., Major Miami LLC, Mensboard Management Inc.,, Shahrik, and Gemide srl liable furthers the policy of fairness and justice, including the prevention of future injuries and the assurance of compensation to victims, given that Plaintiff do not have separate remedies under Title VII because they were classified as independent contractors.

316.     Shahrik's, Dolci's, Major Model Management Inc.'s, Major Miami LLC's, Mensboard Management Inc.'s, and Tacchini's assaults caused harm, including sobstantial physical, mental, and/or emotional harm to Plaintiff.

**TENTH CAUSE OF ACTION:**

**Violation of the Victims of Gender-Motivated Violence     Act, N.Y.C. Admin. Code §§ 10-1101,**
**_et seq._ ("VGMVPL") _against All Defendants_**

317.      Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein

318.      The above-described conduct of Defendant Tacchini, including, but not limited to, Tacchini's sexual assault of Plaintiff in New York City, constitutes a "crime of violence" and a "crime of violence motivated by gender" against Plaintiff as defined by the New York City VGMVPL.

319.      The above-described conduct of Defendant Tacchini, including, but not limited to, Tacchini's sexual assault of Plaintiff in New York City, constitutes a "crime of violence" against Plaintiff and is a "crime of violence motivated by gender" as defined in § 10-1103 ("The term 'crime of violence' means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction," and "The term 'crime of violence motivated by gender' means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.").

320.      Defendant Corporations enabled Tacchini's commission of the crime of violence motivated by gender, and are therefore also liable under the VGMVPL.

321.      As a direct and proximate result of the aforementioned crime of violence and gender-motivated violence, Plaintiff has sustained and will continue to sustain, monetary damages, physical injury, pain and suffering, and serious psychological and emotional distress, entitling her to an award of compensatory and punitive damages, injunctive and declaratory relief, attorneys fees and costs, and other remedies as this Court may deem appropriate damages, as set forth in § 10-1104.

322.      The above-described conduct of Defendant Tacchini constitutes a sexual offense as defined in Article 130 of the New York Penal Law.

323.      Pursuant to § 10-1105(a), this cause of action is timely because it is commenced within "two years and six months after September 1, 2022."

**ELEVENTH CAUSE OF ACTION**

**Breach of contract _against Major Model Management Inc, Gemide srl and Shahrik_**

324.      Plaintiff incorporate by reference all preceding paragraphs as if fully set forth herein.

56

325.     On August 23, 2017, Shahrik in her capacity as Major Model Management Inc.'s Vice President formed and signed a "Major Model Management New York, USA Agency & Management Agreement" contract (hereinafter, "Agreement") with Plaintiff, in which Plaintiff "engage[d] [Major Model Management Inc.] as [Plaintiff's sole and exclusive personal manager in New York. The Agreement defined "Major Milan, Italy" as Plaintiff's "Mother Agency".

326.     In the Agreement, Major Model Management Inc. agreed to "provide advice and counsel to [Plaintiff] with respect to (a) the selection of career opportunities, photographers, advertisers, licensors and other vehicles from [Plaintiff's] Services and the presentation of [Plaintiff] to the advertising and entertainment industries in keeping with [Plaintiff's] talents; (b) publicity, public relations, and advertising;(c) general practices in the modelling, licensing, advertising, entertainment, film, video and television industries; and (d) makeup, hair and composities in the creation of a portfolio for [Plaintiff's] use".

327.     At all relevant times within the agreed Term of Agreement of 3 year(s) commencing on August 23, 2017 and finishing on August 23, 2020 (hereinafter, "the Term"), Plaintiff fulfilled all obligations of the Agreement, i.e.,: "maintain[ed] his weight, not materially change[d] his appearance[70], appear[ed] at all modeling and other professional engagements on a timely basis, refrain[ed] from using illegal drugs and from excessively using alcohol, refrain[ed] from taking any actions that c[ould] adversely affect Major Model Management Inc. or Plaintiff's carreer, by acting in a courteous and professional manner at all times, and [was] available, ready, willing, and able to render services as a fashion model in New York City or at such other location as may be reasonably requested from time to time by [Plaintiff's] clients at least three hundred (300) full working days per Contract Year".

328.     At all relevant times within the agreed Term, Major Model Management Inc. failed to fulfill its above listed obligations of the Agreement, including failing to "advice and counsel" Plaintiff in any aspect of his career, and failing in providing for him "publicity, public relations, and advertising" management.

329.     In the Agreement, the parties agreed upon that the Term "shall be automatically renewed and extended for successive additional periods of one (1) year unless terminated by either party upon written notice delivered no less than ninety (90) days prior to the expiration of the then current Term".

---

70  Plaintiff repeatedly and extensively consulted with Major Model Management Inc.'s agents the length of Plaintiff's hair

330.     Major Model Management Inc. did not have right to terminate the Agreement, because it did not deliver to Plaintiff written notice within the above mentioned period, therefore, the Term was due to be automatically renewed and extended for additional period of one year. year, i.e., until 8/24/2021.

331.     On July 20, 2020[71] Plaintiff under belief that the Agreement would be "automatically" renewed and extended at least until August 23, 2021, contacted Shahrik to inquire how to proceed with the extended contract and the visa, under belief that Major Model Management Inc. would set up an appointment for signing a new contract, and/or provide Plaintiff with the instructions about the visa extension procedure. Plaintiff reasonably expected Major Model Management Inc.'s assistance with the visa, since Major Model Management Inc. was the visa's sponsor, and Plaintiff had knowledge that the visa extension required Major Model Management Inc.'s support letter.

332.     Same day, on July 20, 2020, to Plaintiff's surprise, Major Model Management Inc. terminated the Agreement. As a proximate consequence of Major Model Management Inc.'s action, Plaintiff lost his job, the perspective of earning money, and his visa, in a particularly difficult circumstances, i.e., in the middle of pandemic.

333.     Because (i) Plaintiff fulfilled all of his contractual obligations of (ii) the contract formed between Major Model Management Inc. and Plaintiff on August 23, 2017, but (iii) Major Model Management Inc.'s failed to perform, in consequence (iii) causing damage to Plaintiff, Major Model Management Inc. breached the contract with Plaintiff within the meaning of the New York state common law, as is liable for damages.

334.     Major Model Management Inc.'s, Gemide srl's and Shahrik's actions caused harm, including substantial physical, mental, and/or emotional harm to Plaintiff.

## TWELFTH CAUSE OF ACTION

### Breach of fiduciary duty *against Gemide SRL, Major Model Management Inc., Dolci and Shahrik*

335.     Plaintiff incorporate by reference all preceding paragraphs as if fully set forth herein.

336.     In the Agreement, Plaintiff "designat[ed] and appoint[ed] [Major Model Management Inc.] as [Plaintiff's] attorney-in-fact to act for [Plaintiff] in connection to [Plaintiff's] services".

337.     Fiduciary duty arises from contractual liability, "where one party reposed trust and confidence in another who exercises discretionary functions for the party's benefit or possesses superior expertise on which the party relied"[72].

---

71  33 days before the expiration of the then current Term, which fell on 8/23/2020
72  Daly, 4 Misc.3d at 892

338.     Because of Major Model Management Inc.'s position of attorney-in-fact in connection to Plaintiff's (and others similarly situated models') services, Major Model Management Inc. owed to Plaintiff (and others similarly situated models) a fiduciary duty, as ruled before[73].

339.     At all relevant times throughout the duration of the Agreement, Major Model Management Inc., Gemide srl, Shahrik, and the company's other directors and officers, including Dolci did not act in Plaintiff's best interest, and, among others: (i) did not make any time, money and/or professional expertise investment in developing Plaintiff as a model (ii) knowingly subjecting Plaintiff to Tacchini's battery and sexual misconduct resulting from Tacchini's fraudulent promises of job assignments and career advancement.

340.     Major Model Management Inc., Gemide srl, Shahrik, and the company's other directors and officers, including Dolci, entered into contract with Plaintiff in bad faith, because they knew that Plaintiff could obtain the contracted performance from Major Model Management Inc. and/or Gemide srl only by participation in Tacchini's sex trafficking venture. This bad faith contract resulted in a loss to Plaintiff.

341.     Major Model Management Inc., Gemide srl, Shahrik, and the company's other directors and officers, including Dolci also engaged in other acts that went against their legal duties and/or harmed Plaintiff, including, *inter alia*, intimidation and threats to silence Plaintiff's complaint.

342.     Throughout the duration of the Agreement and subsequent intimidation scheme they ran against Plaintiff's complaint, Major Model Management Inc., Gemide srl, Shahrik, and the company's other directors and officers, including Dolci, placed their own interests above those of Plaintiff to the detriment of Plaintiff.

343.     Shahrik's, Dolci's, Gemide srl's and Major Model Management Inc.'s actions caused harm, including substantial physical, mental, and/or emotional harm to Plaintiff.

### THIRTEENTH CAUSE OF ACTION

**Negligent supervision and retention against Major Model Management Inc., Gemide srl, Mensboard Management Inc., Major Miami LLC, Shahrik and Dolci**

344.     Plaintiff incorporate by reference all preceding paragraphs, as if fully set forth herein.

345.     Gemide SLR was in a special relationship with Tacchini of employer-employee. In the course of this special relationship, Gemde srl had a duty to control Tacchini's conduct to prevent foreseeable harms.

---

73 *Hoffmann v. Major Model Management Inc.*, SDNY Case No: 1:20-CV-6941-LTS-JLC

346.     At all times relevant to this lawsuit, Tacchini and Gemide srl, Major Miami LLC, and Mensboard Mangement Inc, and Dolci were bound with Major Model Management Inc. by partnership by estoppel and contractual agreement. Shahrik represented to Plaintiff on the contract he was signing with Major Model Management Inc. that Gemide srl was Plaintiff 'mother agency'. By the virtue of her actions, Shahrik considered and/or assigned Tacchini as Plaintiff's main booker. Major Model Management Inc., Mensboard Mangement Inc, Dolci and Shahrik had a duty to control Tacchini's conduct to prevent foreseeable harm to Plaintiff.

347.     Gemide srl, Major Model Management Inc., Mensboard Management Inc, Major Miami LLC, Shahrik and Dolci were also in a special relationship with Plaintiff, who was in a particular class or group of persons, models, whom Major Model Management Inc., Gemide srl, Major Miami LLC, Mensboard Management Inc, Shahrik and Dolci knew or should have known would be recruited, enticed or solicited by Tacchini in circumstances reflecting a substantial imbalance of power. Gemide srl, Major Model Management Inc., Mensboard Management Inc, Major Miami LLC, Shahrik and Dolci thus had a duty to Plaintiff which provided him with a right to protection from Gemide srl, Major Model Management Inc., Mensboard Management Inc, Major Miami LLC, Shahrik and Dolci.

348.     Alternatively, Gemide srl, Major Model Management Inc., Mensboard Management Inc, Major Miami LLC, Shahrik and Dolci owed a duty to Plaintiff by virtue of their contracts and communications with Plaintiff, affirming Tacchini's role as gatekeeper for Plaintiff's career opportunities. These contracts and communications thus created the peril, and contributed to or increased the risk that Tacchini would use force, fraud or coercion to engage in sex acts with Plaintiff. Gemide srl, Major Model Management Inc., Mensboard Management Inc, Major Miami LLC, Shahrik and Dolci placed Plaintiff in a situation which exposed Plaintiff to an unreasonable risk of harm through the reasonably foreseeable acts and conduct of Tacchini.

349.     At all relevant times, Gemide srl, Major Model Management Inc., Mensboard Management Inc, Major Miami LLC, Shahrik and Dolci owed a duty to use reasonable care in the retention and/or supervision of their employee or agent, Tacchini.

350.     Gemide srl, Major Model Management Inc., Mensboard Management Inc, Major Miami LLC, Shahrik and Dolci had a duty to control Tacchini in his interactions with aspiring models during meetings taking place within the course and scope of his employment in order to prevent foreseeable harm.

351.     Prior or in the course of the sexual misconduct with Plaintiff and/or and retaliation after Plaintiff opposed it, Gemide srl, Major Model Management Inc., Mensboard Management Inc,

60

Major Miami LLC, Shahrik and Dolci knew or had reason to know that Tacchini was likely to engage in sexual misconduct with male models he came into contact with during the course and scope of his employment. In particular, upon information and belief, Defendants knew or should have known that Tacchini would lure young aspiring models into compromising situations under the guise of business meetings in or outise the agency. Prior or in the course of incidents involving Plaintiff, Gemide srl, Major Model Management Inc., Mensboard Management Inc, Major Miami LLC, Shahrik and Dolci possessed knowledge of Tacchini's propensity to engage in sexual misconduct. At all relevant times, Defendant Dolci supervised Tacchini, Gemide was in employeer-employee relationship, and Gemide srl, Major Model Management Inc., Mensboard Management Inc, Major Miami LLC, Shahrik and Dolci was in principal-agent relationship with Tacchini.

352.     By possessing knowledge of Tacchini's prior sexual misconduct, Gemide srl, Major Model Management Inc., Mensboard Management Inc, Major Miami LLC, Shahrik and Dolci knew or should have known that Tacchini was unfit and/or incopetent to work directly with Plaintiff and other male models, and posed a particular risk of sexually harassing and assaulting them, and that this unfitness and/or incompetence created a particular risk to others.

353.     Gemide srl, Major Model Management Inc., Mensboard Management Inc, Major Miami LLC, Shahrik and Dolci knew or should have known not only that Tacchini and Bongiorno were unfit or incopetent to work directly with young male models and posed a particular risk of sexually harassing and assaulting them, but also that this unfitness created a particular risk to Plaintiff. In Sept, 2020, when Plaintiff confined in Dolci about Tacchini's sexual harassment, sexual assault, and Bongiorno's sexual harassment, Dolci encouraged Plaintiff for further contact with them, to discuss the 'settlement'. This resulted in further sexual harassment, as Tacchini revealed to 'be still loving Plaintiff" in the phone call in October 2020.

354.     Gemide srl, Major Model Management Inc., Mensboard Management Inc, Major Miami LLC, Shahrik and Dolci failed to exercise reasonable care in training and supervising Tacchini, or failing to engage in responsive and corrective measures to prevent foreseeable harms, and instead continued to condone, enable and facilitate Tacchini him in meetings in or outside agency with male models one-on-one with the knowledge that there was a substantial likelihood for sexual misconduct.

355.     Tacchini's meetings with Plaintiff occurred within the course and scope of his employment. The contact between Plaintiff and Tacchini was generated by the agency relationship between Gemide srl, Major Model Management Inc., Mensboard Management Inc, Major Miami

61

LLC, Shahrik and Dolci and Tacchini and by the employer-employee relationship between Gemide srl and Tacchini.

356.     Defendant Gemide srl, Major Model Management Inc., Mensboard Management Inc, Major Miami LLC, Shahrik and Dolci failed to exercise reasonable care to protect Plaintiff as a model and/or an aspiring model whom Gemide srl, Major Model Management Inc., Mensboard Management Inc, Major Miami LLC, Shahrik and Dolci knew or should have known would be targeted by Tacchini for his sexual gratification.

357.     Defendant Gemide srl, Major Model Management Inc., Mensboard Management Inc, Major Miami LLC, Shahrik and Dolci negligence in retaining and/or supervising and otherwise failing to take steps to control Tacchini, was a substantial factor in causing Plaintiff's harm.

358.     Defendant Gemide srl, Major Model Management Inc., Mensboard Management Inc, Major Miami LLC, Shahrik and Dolci negligence in failing to protect Plaintiff as a model and/or aspiring model exposed to Tacchini's advances was a substantial factor causing Plaintiff's harm.

359.     It was foreseeable that Tacchini would engage in sexual misconduct if Gemide srl, Major Model Management Inc., Mensboard Management Inc, Major Miami LLC, Shahrik and Dolci continued to enable, condone and facilitate Tacchini in his private one-on-one business meetings with male models. At all relevant times, Gemide srl, Major Model Management Inc., Mensboard Management Inc, Major Miami LLC, Shahrik and Dolci knew Tacchini was using his power and position with *Major* to coerce male models into engaging in sexual contact, and knew that this sexual misconduct would cause harm.

360.     Gemide srl, Major Model Management Inc., Mensboard Management Inc, Major Miami LLC, Shahrik and Dolci failed to institute corrective measures to protect male models who came into contact with Tacchini for business purposes, including Plaintiff, from sexual misconduct, despite Gemide srl, Major Model Management Inc., Mensboard Management Inc, Major Miami LLC, Shahrik, Dolci and other employees were possessing actual notice of Tacchini's sexually inappropriate behavior. Such acts and omissions demonstrate a conscious disregard for the safety of others. Dolci was aware of the probable dangerous consequences of failing to remove, or adequately supervise or control, Tacchini. In failing to do so, Gemide srl, Major Model Management Inc., Mensboard Management Inc, Major Miami LLC, Shahrik and Dolci acted with actual malice and with conscious disregard to Plaintiff's safety.

361.     The negligence of Gemide srl, Major Model Management Inc., Mensboard Management Inc, Major Miami LLC, Shahrik and Dolci in supervising and or retaining Tacchini and

Bongiorno was a substantial factor in causing harm to Plaintiff, and economical damages., who is entitled to damages.

## FOURTEENTH  CAUSE OF ACTION

### Intentional infliction of emotional distress *against Tacchini, Shahrik, Dolci, Major Model Management Inc., Gemide SRL, Mensboard Management, Inc.*

362.     Plaintiff incorporate by reference all preceding paragraphs as if fully set forth herein.

363.     Tacchini' extreme and outrageous conduct intentionally or recklessly caused severe emotional distress to Plaintiff.

364.     Tacchini's, Shahrik's, Dolci's, Major Model Management Inc.'s, Gemide srl's, Mensboard Management, Inc.'s outrageous conduct was not the type of ordinary rude or obnoxious behavior that men should be expected to weather. Rather, Tacchini's, Shahrik's, Dolci's, Major Model Management Inc.'s, Gemide srl's, Mensboard Management, Inc.'s conduct exceeded all possible bounds of decency.

365.     Tacchini, Shahrik, Dolci, Major Model Management Inc., Gemide srl and Mensboard Management, Inc. are thus responsible for acts of assault, battery, and intentional infliction of emotional distress.

366.     Tacchini, Shahrik, Dolci, Major Model Management Inc., Gemide srl and Mensboard Management, Inc. acted with intent or recklessness, knowing that Plaintiff was likely to endure emotional distress. Indeed, they used this distress to subdue and threaten Plaintiff and prevent him from complaining or suing based on his actions. They did so with deliberate disregard as to the high possibility that severe emotional distress would occur.

367.     Tacchini's, Shahrik's, Dolci's, Major Model Management Inc.'s, Gemide srl's, Mensboard Management, Inc.'s conduct caused suffering for Plaintiff at levels that no reasonable person should have to endure.

368.     Tacchini's conduct was committed within the scope of his employment at Gemide srl and within his work for Major Model Management Inc. and Major Miami LLC. A causal nexus existed between (i) Tacchini's grooming of male models (including Plaintiff) in the fashion industry to work with Gemide srl, Major Model Management Inc. and Major Miami LLC and (ii) his abuse of his power to coerce and batter those men. Each act of battery of Plaintiff was lured with the prospect of modeling jobs and/or contract in Major Model Management Inc. and/or contract with Gemide srl and/or contract with Major Models Miami, and Tacchini was foreseeable given, inter alia, the use of

the employees of Major Model Management Inc. and/or Gemide srl and/or Major Models Miami to lure the victim and the commission of the acts at locations paid for by Dolci and Gemide.

369.     Shahrik's and Dolci's conduct within their intimidation scheme was also committed within the scope of their duties as officers and/or executives of Major Model Management Inc., Genmide srl and/or Mensboard Management Inc. A causal nexus existed between (i) their deliberate and malicious actions to subject Plaintiff to Tacchini's inviluntary servitude, and their deliberate and malicious intimidation, fraud and deception to prevent Plaintiff from complaining, and (ii) their role, power and authority to prevent and/or to stop Tacchini's misconduct on Plaintiff, and to prevent and/or to stop intimidating Plaintiff for his complaint.

370.     Shahrik's, Dolci's, Tacchini's, Mensboard Management Inc.'s and Major Model Management Inc.'s pattern of fraud, misrepresentation and deception prevented Plaintiff from filing this lawsuit earlier, therefore estoppel should be applied to toll the statue of limitations with respect to this claim.

371.     Shahrik's, Dolci's, Tacchini's, Mensboard Management Inc.'s and Major Model Management Inc.'s conduct is not so unusual or starling that it would seem unfair to include the loss resulting from it among other costs of Major Models's and Gemide's business. Assaults in the modelling context of the "casting couch" are exactly why male models, members of the industry would expect modeling agency companies to take extra precautions to ensure that they are protected from abuse by a powerful booker and/or executive.

372.     Shahrik's, Dolci's, Tacchini's, Mensboard Management Inc.'s and Major Model Management Inc.'s pattern of continual and egregious acts of intimidation caused duress and continuing suffering under their intentional infliction of emotional distress, and is sufficient to toll the statue of limitation for years.

373.     Holding Tacchini, Shahrik, Dolci, Major Model Management Inc., Gemide srl and Mensboard Management, Inc. liable furthers the policy of fairness and justice, including the prevention of future injuries and the assurance of compensation to victims, given that Plaintiff did not have separate remedies under Title VII because Plaintiff was classified as independent contractor.

374.     This action falls within one or more of the exceptions set forth in CPLR §1602, specifically: (5), due to Defendant's intentional conduct, (7) as Defendants acted with reckless disregard, (8) Article Ten of the Labor Law, and (11) as Defendants acted knowingly or intentionally, and in concert.

375.     This action falls within one or more of the exceptions set forth in CPLR §1601, as with due diligence, Plaintiff is unable to obtain jurisdiction over any such person that may have any

64

fault in this matter aside from Defendants herein, and in that Defendants were vicariously responsible for any possible additional parties with liability herein.

## FIFTEENTH CAUSE OF ACTION

### Negligent infliction of emotional distress *against Tacchini, Shahrik, Dolci, Major Model Management Inc., Gemide SRL, Mensboard Management, Inc., Major Milan LLC (all Defendants)*

376. Plaintiff incorporate by reference all preceding paragraphs as if fully set forth herein.

377. Defendants' conduct negligently caused severe emotional distress to Plaintiff.

378. Defendants could reasonably foresee that Tacchini's actions, and their own intimidation and/or discriminatory actions would have caused emotional distress to Plaintiff.

379. Plaintiff was in a specific zone of danger meetings with Tacchini and at risk of physical harm, causing his fear.

380. Plaintiff, immediately or shortly after meetings with Tacchini, suffered distress and emotional harm.

381. Tacchini's conduct was committed within the scope of his employment at Gemide srl and within his work for Major Model Management Inc. and Major Models Miami. A causal nexus existed between (i) Tacchini's grooming of male models (including Plaintiff) in the fashion industry to work with Gemide srl, Major Model Management Inc. and Major Miami LLC and (ii) his abuse of his power to coerce and batter those men. Each act of battery of Plaintiff was lured with the prospect of modeling jobs and/or contract in Major Model Management Inc. and/or contract with Gemide srl and/or contract with Major Models Miami, and Tacchini was foreseeable given, *inter alia*, the use of the employees of Major Model Management Inc. and/or Gemide srl and/or Major Models Miami to lure the victim and the commission of the acts at locations paid for by Dolci and Gemide.

382.     Shahrik's and Dolci's conduct within their intimidation scheme was also committed within the scope of their duties as officers and/or executives of Major Model Management Inc., Genmide srl and/or Mensboard Management Inc. A causal nexus existed between (i) their deliberate and malicious actions to subject Plaintiff to Tacchini's inviluntary servitude, and their deliberate and malicious intimidation, fraud and deception to prevent Plaintiff from complaining, and (ii) their role, power and authority to prevent and/or to stop Tacchini's misconduct on Plaintiff, and to prevent and/or to stop intimidating Plaintiff for his complaint.

383.     Defendants' conduct is not so unusual or starling that it would seem unfair to include the loss resulting from it among other costs of Defendants' business. Assaults in the modeling context

of the "casting couch" are exactly why male models, members of the industry would expect modeling agency companies to take extra precautions to ensure that they are protected from abuse by a powerful booker and/or executive.

384.     Defendant's pattern of continual and egregious acts of intimidation caused duress and continuing suffering under their intentional infliction of emotional distress, and is sufficient to toll the statue of limitation for years.

385.     Defendants' pattern of fraud, misrepresentation and deception prevented Plaintiff from filing this lawsuit earlier, therefore estoppel should be applied to toll the statue of limitations with respect to this claim.

386.     Holding Defendants' liable furthers the policy of fairness and justice, including the prevention of future injuries and the assurance of compensation to victims, given that Plaintiff did not have separate remedies under Title VII because Plaintiff was classified as independent contractor.

387.     This action falls within one or more of the exceptions set forth in CPLR §1602, specifically: (5), due to Defendant's intentional conduct, (7) as Defendants acted with reckless disregard, (8) Article Ten of the Labor Law, and (11) as Defendants acted knowingly or intentionally, and in concert.

388.     This action falls within one or more of the exceptions set forth in CPLR §1601, as with due diligence, Plaintiff is unable to obtain jurisdiction over any such person that may have any fault in this matter aside from Defendants herein, and in that Defendants were vicariously responsible for any possible additional parties with liability herein.


## SIXTEENTH CAUSE OF ACTION

### Alter ego and piercing the corporate veil *against Dolci*

389.     Plaintiff incorporate by reference all preceding paragraphs as if fully set forth herein.

390.     Dolci exercised complete control domination over Major Model Management SRL, Major Miami LLC and Gemide SRL with respect to the transaction described in details in this complaint..

391.     Concerning the matter before the court, Major Model Management Inc, Major Miami LLC and Gemide SRL were not run as independent corporations but became the handmaiden or an agent of Guido Dolci, their founder, owner, official, president and their sole financial decision maker, such that those corporate entities were merely Dolci's alter egoes.

392.     The three entities, Major Model Management Inc., Major Miami LLC and Gemide srl, were founded and are governed by the same person. Dolci owned ninety (90%) percent of

Gemide srl and Dolci's son, Michael Guido Dolci, owned its remaining ten (10%) percent. Gemide srl's founder, Gemide's main shareholder, Major Model Management Inc. sole officer, Major Model Management Inc.'s President, and Major Miami LLC owner, is the same person.

393.    At all relevant times, Major Model Management SRL, Major Miami LLC and Gemide SRL lacked separate corporate identity. Major Model Management SRL, Major Miami LLC and Gemide SRL are in fashion business and have been operating as modeling agencies using the very same business model.

394.    Major Model Management Inc. covered Major Miami operating expenses, documented for 20200 and 2021. financed Major Miami. In 2000, Total Miami expenses $8,000 (Miami apt rent, furniture, office supplies, travel expenses, utilities, website subscription, in 2021 $427 (expenses like Licenses and permit, Miami website subscription).

395.    Since the establishment of Major Model Management Inc.,  Gemide srl "transitioned from a boutique agency to global innovator"[74]. Major Model Management Inc.'s revenue profited Gemide srl and Major Miami LLC.

396.    Major Model Management SRL, Major Miami LLC and Gemide SRL shared employees including Tacchini and Shahrik, who similarly to other  upper management individuals in Milan, reported directly to Dolci. Multiple *Major* models, including Plaintiff, were simultaneously represented by both *Major Models New York* and *Major Models Milan* modeling agencies, and/or by Major Miami LLC.

397.    At all relevant times, Plaintiff did or attempted to do business with Major Model Management SRL, Major Miami LLC and Gemide SRL. Plaintiff contracted with Gemide srl in 2009, and throughout a decade-long period was in Gemide srl business orbit and under the influence of Gemide srl's employees. Gemide srl advertised Plaintiff on its male model board from 2009 until 2020, and contracted Plaintiff for jobs in 2014 while Plaintiff lived in Brazil. In 2017, Plaintiff contacted Gemide srl's employee, who represented to Plaintiff to be capable of securing the interview for modeling contract with Major Model Management Inc., and the course of events proved that his representation was right. In 2020, Plaintiff was referred to Major Miami LLC, and reasonably expected to be included on the board had not for Tacchini's retaliation.

398.    Dolci's domination over Major Model Management Inc. was used to commit wrong against Plaintiff which resulted in Plaintiff's injury.

399.     Funds were put in and taken out of the corporations for personal rather than corporate purposes.

---

74  As per the company's advertising material

67

400.     Dolci does business in the US, including registering Major Miami LLC under his name, as a person authorized to manage LLC. For that purpose, Dolci provided his New York address[75].

401.     Between 2000 and 2023, Dolci used the corporate entities as his alter ego to avoid liability for the wrongs which the companies faced towards the sexual harassment and retaliation complaint, which Plaintiff filed with the New York State Division of Human Rights.

402.     Among wrongs committed in result of Dolci's domination, Plaintiff received (i) fraudulent promises and representations made by Gemide srl employee to recruit, entice and solicit Plaintiff for sexual acts; (ii) fraudulent misrepresentations made by the Lawyers Team participants from Milan, upon information and belief, financed by Dolci and/or Gemide srl, to intimidate Plaintiff and to salience his sexual harassment complaint against Major Model Management Inc., Tacchini and Dolci; (iii) witness intimidation based on fraudulent representations, and (iv) executing the "bad faith" bankruptcy filling.

403.     Upon information and belief, there was no review by the outside accountants and a determination of what funds could safely be distributed in light of upcoming potential cash needs,

404.     The commingling of assets and liabilities of Major Model Management Inc. with the ones of Dolci's individual ones, and the assets and liabilities of Major Miami LLC and Gemide srl, allowed Dolci to realize the undercapitalization scheme for Major Model Management Inc. prior to filing for bankruptcy. Such undercapitalization was realized, among others, by Dolci throuugh money transfers from the Major Model Management Inc. corporate account to the affiliate Major Miami LLC, and to Gemide SRL

405.     As such, Major Model Management Inc.'s financial trouble was solely due to a disregard of corporate form, and Major Model Management Inc.'s separate corporate existence was used to perpetrate a fraud or an injustice in dealings with Plaintiff.

406.     Dolci completely controlled Major Model Management Inc., Major Miami, Major Model Management Inc. and Major Miami lacked separate identity concerning the matter before the court.

407.      Under alter ego doctrine, Dolci's liability is derivative to that of the corporation. To prevent fraud and accomplish justice, the Court should disregard the corporation separate entity. The corporate veil may be pierced where an otherwise separate corporate existence has been used to "subvert justice'". Piercing the veil of a corporate entity is an equitable remedy invoked to cure certain injustices that would otherwise go unaddressed.

---

75  200 Liberty Street, 27th Floor, New York, NY 10281 US.

408.    WHEREFORE, The Court should disregard the corporation separate entity and impose personal jurisdiction over Dolci for the wrong incurred on him by Major Model Management Inc., Major Miami LLC and Gemide srl.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays judgment be entered in her favor against Defendants, and each of them, as follows:

1. For a money judgment representing compensatory damages including consequential damages, lost wages, earning, and all other sums of money, together with interest on these amounts, according to proof;

2. For a money judgment for mental pain and anguish and severe emotional distress, according to proof;

3. For punitive and exemplary damages according to proof;

4. For attorneys' fees and costs;

5. For prejudgment and post-judgment interest; and

6. For such other and further relief as the Court may deem just and proper.


Dated: November 21, 2023
        New York, New York


                        Respectfully submitted,

                        PEDRO AGRA

                        (Plaintiff Pro Se)


                        500 E 63rd St, Apt 13F

                        New York, NY 10065

                        Telephone: (646) 770 2045

                        Email: agra13@gmail.com