Pedro Agra
500 E 63rd St, Apt 13F
New York, NY 10065
(646) 770 2045
agra13@gmail.com

                                         March 16, 2026

**Via ECF**
The Hon. Jennifer E. Willis
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

               **In re: Agra v. Dolci et al., 23-cv-10255 (AT) (JEW)**

Dear Judge Willis,

   I, Pedro Agra, Plaintiff pro se, write in response to Mr. D'Avanzo's letter dated March 13, 2026 (ECF 132). I respectfully oppose his request to strike portions of my reply papers.

### 1.    The Exhibit Submitted by Mr. D'Avanzo Confirms the Accuracy of My Concerns

   Mr. D'Avanzo attached an email from Major's Accounting Manager dated April 7, 2025 (ECF 132-1). This document, which he submitted to support his position, actually confirms the factual basis for my original concern:

- It states there was a formal "agreement for Agra" budgeted at $30,000;
- It confirms that Major had already paid $31,400 to Mr. D'Avanzo's firm;
- It explains that Major would not pay "additional invoices which were not in the budget";
- It demonstrates that Mr. D'Avanzo kept submitting invoices after exceeding the agreed budget.

   This exhibit proves that Mr. D'Avanzo had a paid engagement for this litigation, exceeded the agreed budget, continued billing, and was only cut off after exhausting the funds. The $31,400 already paid is not mentioned in his letter to the Court. His characterization of himself as "pro bono counsel" in October 2025, without disclosing that he had already been paid $31,400 for this matter, presents an incomplete and misleading picture.

   My supplemental declaration accurately identified payments to Mr. D'Avanzo's firm from official bankruptcy records. Those payments were real. His current "pro bono" status exists only because he mismanaged the budget, not because of charitable intent.

### 2.    The Seminar Payment Further Undermines His Narrative

   Mr. D'Avanzo acknowledges receiving a $500 payment from Major on March 27, 2025 (ECF 131-2 at 18) for a seminar on the Fashion Workers Act. This shows he maintained a paid consulting relationship with Major—the same entity whose principal he represents—even as his legal fees exceeded the litigation budget. This ongoing financial relationship with the corporate defendant further blurs the lines between "independent" counsel and the enterprise he serves.

### 3.    The May 2023 Threatening Email Demonstrates This Counsel's Client's Bad Faith

                                         1

Mr. D'Avanzo now seeks to distance himself from any suggestion of misconduct. However, the record reflects that on May 1, 2023, Kenneth Sussmane—who, like Mr. D'Avanzo, represented Defendant Nadia Shahrik—sent Plaintiff a threatening email stating that his firm was "authorized to take all steps" if Plaintiff did not retract his claims (ECF 129-4). The email did not specify what "steps" would be taken, causing Plaintiff to fear for his and his wife's safety and report the matter to the NYPD's 19th Precinct. Mr. D'Avanzo now represents the same client, Shahrik, whose legal team engaged in this intimidation. While Mr. D'Avanzo may not have sent the email himself, his client is responsible for the conduct of her counsel. This is further evidence of the bad faith that has permeated Defendants' response to Plaintiff's complaints— from fabricating criminal charges in Milan, to witness tampering during the NYSDHR investigation, to threatening a pro se litigant.

### 4.        This Episode Confirms Plaintiff's Allegations of Interconnectedness

The D'Avanzo budget dispute perfectly illustrates a central thesis of Plaintiff's complaint: Defendants' interconnectedness. Major Model Management Inc. (the debtor) paid Mr. D'Avanzo to represent Shahrik and Mensboard Management, Inc. When the budget ran out, the payments stopped—but the representation continued, presumably because Shahrik and the enterprise remain aligned. Mr. D'Avanzo simultaneously provided paid consulting (the FWA seminar) to Major while representing its principals. The lines between "separate" defendants are functionally meaningless; they operate as a single, integrated enterprise, just as Plaintiff has alleged throughout this litigation.

### 5.        Mr. D'Avanzo's Motion to Strike Lacks Colorable Merit, and His Letter Presents a Misleading Picture to the Court

Mr. D'Avanzo's letter omits material facts that are essential to an accurate understanding of his relationship with Defendants. He claims to have been "pro bono counsel" without disclosing:
- The existence of a formal $30,000 budget agreement for this litigation
- That his firm was paid $31,400 under that agreement
- That he continued submitting "additional invoices which were not in the budget" after exhausting the agreed funds
- That his "pro bono" status exists only because Major cut off further payments, not because of voluntary charitable intent

These omissions, in a sworn filing to this Court, are concerning. If Mr. D'Avanzo had disclosed these facts, the Court would have a complete picture: an attorney who was paid $31,400, exceeded his budget, kept billing, was cut off, and now represents himself as "pro bono" while omitting the substantial payments that preceded that status. Plaintiff does not seek sanctions at this time. However, Plaintiff respectfully notes that such conduct—presenting an incomplete and misleading picture to the Court—may implicate multiple sources of legal authority, such as Federal Rule of Civil Procedure 11(b), 28 U.S.C. § 1927, and this Court's inherent power to sanction bad-faith litigation conduct[1]. Plaintiff reserves all rights to seek appropriate

---

1    Federal Rule of Civil Procedure 11(b)** requires that by presenting a filing to the Court, an attorney certifies "that the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument" and "that the factual contentions have evidentiary support." Rule 11(b)(2)-(3). Omitting material facts that undermine a factual representation—here, the existence of a $30,000 budget, $31,400 in payments, and the true reason for the "pro bono" status—is inconsistent with this certification obligation. 28 U.S.C. § 1927 authorizes sanctions against "[a]ny attorney...who so multiplies the proceedings in any case unreasonably and vexatiously." The purpose of the statute is to "deter unnecessary delays in litigation." *Olivieri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986). This Court's inherent power to sanction bad-faith conduct is well established. The Supreme Court has long recognized that federal courts possess "broad inherent power to protect the administration of justice by levying sanctions in response to abusive litigation practices." *Penthouse Int'l, Ltd. v. Playboy Enters., Inc*., 663 F.2d 371, 386 (2d Cir. 1981); see also *Chambers v. NASCO, Inc*, 501 U.S. 32, 43 (1991). Sanctions are justified pursuant to the court's inherent power where there is a "specific finding" of bad faith and "clear evidence that the conduct at issue is (1) entirely without color and (2)

sanctions under these authorities if Mr. D'Avanzo does not correct the record or if further misleading filings occur. At this juncture, Plaintiff simply brings these omissions to the Court's attention and requests that the Court consider them in evaluating Mr. D'Avanzo's motion to strike and the broader context of Defendants' conduct in this litigation. Under the standard articulated in *Petrobras*, Mr. D'Avanzo's motion to strike is entirely without color because it seeks to strike factual recitations supported by his own documentary evidence.

### 6.    The Request to Strike is Meritless

Mr. D'Avanzo asks the Court to strike my "baseless and ad hominem attacks." But my filings identified discrepancies between his "pro bono" claim and documentary evidence. The exhibit he now submits proves those discrepancies were real. Identifying factual inconsistencies is not an "attack"—it is proper advocacy. A party cannot immunize itself from scrutiny by labeling factual recitations as "personal attacks." More importantly, the challenged passages are a minor part of my reply, which primarily addresses the legal standards for amendment under Rules 15 and 16, the viability of my Title VII and NYSHRL claims, and the proper pleading of RICO allegations. Striking these passages would serve no legitimate purpose but would improperly attempt to sanitize the record.

### 7.    The Broader Pattern of Bad Faith Remains Undisputed

Mr. D'Avanzo's letter does not address the far more serious misconduct documented in my reply:
- Fabricated criminal charges in Milan (ECF 131-6), where Defendant Dolci's lawyer provided a false docket number and Plaintiff's Italian counsel obtained official confirmation from the Milan Public Prosecutor's Office that "THERE IS NO ENTRY" —meaning no criminal proceedings of any kind had ever been filed. The docket number was entirely fabricated.
- Witness tampering during the NYSDHR investigation (FAC ¶¶ 143-145), where Defendants sent a mass email to models falsely claiming Plaintiff was a "hacker" and instructing them to ignore his messages "to avoid eventually problems with an international lawsuit."
- Fraudulent concealment of Plaintiff's claim in bankruptcy proceedings (FAC ¶¶ 148-156), where Defendant Dolci filed sworn statements omitting Plaintiff's pending NYSDHR complaint.
- Threatening communications to a *pro se* litigant (ECF 131-4) from counsel representing the same client Mr. D'Avanzo now represents.

These uncontested facts demonstrate a pattern of bad faith by Defendants that the Court should consider in exercising its discretion on Plaintiff's motion to amend.

### 8.    Discovery May Be Warranted But Is Not Currently Sought

If the Court has any concern about the completeness of Mr. D'Avanzo's representations regarding his current relationship with Defendants, Plaintiff is prepared to seek limited discovery on this issue. The full extent of financial and professional connections between defense counsel and the corporate defendants is relevant to the broader pattern of interconnectedness Plaintiff has alleged. However, Plaintiff respectfully submits that such discovery is unnecessary at this stage, as the record already demonstrates that my identification of payments was accurate and that Mr. D'Avanzo's "pro bono" characterization, while technically true now, omits material context.

### 9.    Conclusion

I accept Mr. D'Avanzo's statement that he is currently representing his clients without compensation. However, the exhibit he submitted confirms that my identification of payments to his firm was accurate and

---

motivated by improper purposes." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). Courts in this District have sanctioned attorneys for similar conduct. See *In re Petrobras Sec. Litig*, No. 14-cv-9662 (JSR), (S.D.N.Y. Sept. 1, 2018). In *Petrobras*, the court imposed sanctions under § 1927 and its inherent power against an attorney whose filings were "entirely without color" and who acted in bad faith. *Id*.* at *16.

that he was paid $31,400 for this litigation before being cut off for exceeding the budget. His request to strike portions of my reply should be denied.

The Court should proceed to rule on my motion for leave to file a Fourth Amended Complaint based on the full record and governing legal standards.

Respectfully submitted,

PEDRO AGRA

------------------------------------------------
500 E 63rd St, Apt 13F
New York, NY 10065
(646) 770 2045
agra13@gmail.com
(Plaintiff *Pro Se*)