**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X
PEDRO AGRA,

Plaintiff,

-against-

GUIDO DOLCI, *et al.*,

Defendants.
--------------------------------------------------------------X

**ORDER**

**23-CV-10255 (AT) (JW)**

**JENNIFER E. WILLIS, United States Magistrate Judge:**

On February 5, 2026, Plaintiff filed a motion for leave to file a fourth amended complaint. Dkt. No. 122. On December 23, 2026, Defendants moved to strike Plaintiff's third amended complaint. Dkt. No. 115. For reasons stated more fully below, the Court **DENIES** Plaintiff's motion for leave to file a fourth amended complaint at Dkt. No. 122, **GRANTS** Defendants' motion to strike the third amended complaint at Dkt. No. 115, and **DENIES** Plaintiff leave to further amend at this time.

## BACKGROUND

### A. Procedural History

#### 1. NYSDHR Action

On December 1, 2020, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") against Defendants Major Model Management Inc. ("MMM"), Guido Dolci ("Dolci"), Massimo Tacchini ("Tacchini"), and Nadia Shahrik ("Shahrik"). Dkt. No. 129-2. On May 1, 2023, Plaintiff "request[ed] an administrative convenience dismissal to pursue [his] case in federal court." Dkt. No. 129-3. On January 9, 2026, the court dismissed the NYSDHR case for administrative convenience. Dkt. No. 119-1.

**2. Instant Action**

On November 21, 2023, Plaintiff filed his initial federal complaint. Dkt. No. 1. On December 10, 2024, Plaintiff filed a first amended complaint, which is the operative complaint in this action. Dkt. No. 62 ("FAC").

On January 20, 2025, Defendants Dolci, Shahrik, MMM, Major Miami LLC ("Miami"), Gemide Srl ("Gemide"), and Mensboard Management, Inc. ("Mensboard") filed a motion to dismiss the first amended complaint. Dkt. Nos. 68–69. On August 15, 2025, this Court issued a Report and Recommendation granting the motions to dismiss based on service and personal jurisdiction grounds, which was adopted in full by Judge Torres. See Dkt. No. 97 ("R&R"); Dkt. No. 105 ("MTD Order").

The Court dismissed all claims against MMM with prejudice. MTD Order. For Defendants Dolci, Shahrik, Gemide, and Mensboard, the Court granted the motion to dismiss without prejudice, granting Plaintiff leave to perfect service. Id. Lastly, the Court granted Miami's motion to dismiss without prejudice, granting leave to amend his complaint "as it concerns Agra's personal jurisdiction allegations about Miami." Id.

On October 30, 2025, Plaintiff filed his second amended complaint. Dkt. No. 106. On November 4, 2025, Defendants Gemide, Dolci, Shahrik, Miami, and Mensboard (collectively, "Remaining Defendants[1]") filed a letter moving to strike the

[1] The Court notes that this does not include Massimo Tacchini (who has never entered the case) or MMM, who was dismissed from the case with prejudice. See Dkt. No. 105.

pleading as improper because Plaintiff included new allegations beyond the Court's order allowing amendments "as it concerns Agra's personal jurisdiction allegations about Miami." Dkt. No. 108. On November 18, 2025, the Court agreed that Plaintiff went "well beyond the scope of the Court's narrow order" and granted Remaining Defendants' request to strike the second amended complaint. Dkt. No. 112. The Court granted Plaintiff leave to amend again, but warned Plaintiff "that amending his complaint beyond the scope of the Court's order [] may warrant waiver of an additional opportunity to amend." Id.

On December 15, 2025, Plaintiff filed a third amended complaint. Dkt. No. 113. On December 23, 2025, Remaining Defendants filed a letter moving to strike the third amended complaint, contending that the proposed amendment yet again included a myriad of facts unrelated to personal jurisdiction over Miami. Dkt. No. 115.

The Court did not rule on that motion to strike the third amended complaint because shortly after, on January 20, 2026, Plaintiff filed a letter for leave to file a fourth amended complaint. Dkt. No. 119. Plaintiff sought leave to amend because on January 9, 2026, the NYSDHR dismissed his parallel administrative complaint, based on administrative convenience. Dkt. No. 119. As such, Plaintiff contends that the NYSDHR dismissal "warrants the inclusion of direct federal claims under Title VII of the Civil Rights Act of 1964 and state claims" in the instant action. Id.

The Court directed the parties to brief Plaintiff's motion for leave to amend. Dkt. No. 121. On February 5, 2026, Plaintiff filed his memorandum of law in support

of his motion, along with supporting papers. Dkt. Nos. 122–124. On February 26, 2026, Remaining Defendants filed an opposition. Dkt. No. 129. On March 12, 2026, Plaintiff filed a reply in further support of his motion. Dkt. Nos. 130–131. On July 29, 2026, the Court directed the parties to provide additional briefing regarding whether "Plaintiff's proposed Title VII claims were procedurally barred" by Plaintiff's NYSDHR case. Dkt. No. 134. Each party provided their position. See Dkt. Nos. 135, 140, 141, 142. The Court considers the motion fully briefed.

## LEGAL STANDARD[2]

Courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, courts "retain the discretion to deny [] leave in order to thwart tactics that are dilatory, unfairly prejudicial, or otherwise abusive.'" Littlejohn v. Artuz, 271 F.3d 360, 363 (2d Cir. 2001); see also Foman v. Davis, 371 U.S. 178, 182 (1962) (noting that "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment" are reasons to deny leave). Proposed

[2] The Court finds that Rule 15(a)(2)'s liberal standard should be used to determine Plaintiff's motion to amend. Remaining Defendants argue that Plaintiff's motion for leave to amend should either be (1) be treated as a motion for reconsideration of the Court's previous orders from October 30, 2025 or November 18, 2025 (see Dkt. No. 129 at 7–8) or (2) that the more stringent standard for leave to amend under Rule 16(b) should be used instead of Rule 15(a)(2) (see id. at 13–14). The Court rejects both arguments. First, Plaintiff's instant motion is not a motion for reconsideration because it is premised on the January 9, 2026, administrative dismissal of the NYSHR complaint. Second, Rule 16(b) does not apply because, as Remaining Defendants acknowledge, no scheduling order has been issued yet in this case.

amendments are futile if they "would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." Panther Partners Inc. v. Ikanos Commc'ns, Inc., 681 F.3d 114, 119 (2d Cir.2012).

## DISCUSSION

Here, Remaining Defendants argue that Plaintiff's motion for leave to amend should be denied because it is untimely, prejudicial, and futile.

### A. Proposed fourth amended complaint

#### 1. Amendment was timely

The NYSDHR dismissed Plaintiff's complaint for administrative convenience on January 9, 2026. Dkt No. 119-1. Shortly after, on January 20, 2026, Plaintiff notified the court of the NYSDHR dismissal and his intention to move for leave to amend. Dkt No. 119. As such, the Court finds that Plaintiff's motion for leave to amend is timely.

#### 2. Proposed additional claims are futile

Plaintiff seeks to amend his complaint to include claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and New York Executive Law § 296.[3] Remaining Defendants contend that both claims are futile. The Court agrees.

##### a. Title VII claims

"As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the

[3] Plaintiff initially sought to include in his amended complaint a request for attorney fees, but withdrew that request in his reply papers. See Dkt. No. 130 at 15.

EEOC." Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003); see also 42 U.S.C. § 2000e–5(e)-(f). "Exhaustion of administrative remedies through the EEOC is 'an essential element' of the Title VII . . . statutory scheme[] and, as such, a precondition to bringing such claims in federal court." Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001) (quoting Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000). "The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action." Fowlkes v. Ironworkers Local 40, 790 F.3d 378, 384 (2d Cir. 2015) (quoting Brown v. Coach Stores, Inc., 163 F.3d 706, 712 (2d Cir. 1998)). That purpose "would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC." Miller v. Int'l Tel. & Tel. Corp., 755 F.2d 20, 26 (2d Cir. 1985). Under Title VII's exhaustion requirements, a "right-to-sue letter is a necessary prerequisite to filing suit." Newsome v. Berman, 24 F. App'x 33, 34 (2d Cir. 2001). However, "a plaintiff's failure to obtain a notice-of-right-to-sue-letter is not a jurisdictional bar, but only a precondition to bringing a Title VII action that can be waived by the parties or the court[,]" and accordingly, a failure to obtain a right-to-sue letter can be excused by the Court on equitable grounds. Pietras, 180 F.3d at 474.

Remaining Defendants contend Plaintiff's Title VII claims are futile for failure to exhaust administrative remedies. Plaintiff counters that he has exhausted administrative remedies because his NYSDHR charge was dual-filed with the EEOC. In support, Plaintiff cites case law that "'[a] charge filed with the NYSDHR may be

deemed a charge filed with the EEOC for exhaustion purposes,' provided it is dual-filed." Id. (citing Pustilnik v. Hynes, No. 96 Civ. 3989 (JG), 1998 WL 813411, at *4 n. 5 (E.D.N.Y. July 21, 1998)). Further, while Plaintiff concedes that he failed to obtain a right-to-sue letter, he argues that "[t]he NYSDHR's [administrative] [d]ismissal operates as the functional equivalent of a right-to-sue letter, satisfying exhaustion." Dkt. No. 142. Plaintiff cites no case law to support this proposition.

Plaintiff's arguments are unavailing.[4] First, Plaintiff's contention that he satisfied exhaustion requirements by dual-filing the NYSDHR charge with the EEOC is not supported by allegations in the proposed complaint. While true that the Eastern District of New York in Pustilnik held that a "charge filed with the NYSDHR may be deemed a charge filed with the EEOC for exhaustion purposes," the court clearly stated that "in order for this to be true, and for the NYSDHR charge to serve as a predicate for a [] claim in federal court, the plaintiff must have indicated that [he] wished [his] NYSDHR charge to be a 'dual filing' with the EEOC." Pustilnik, 1998 WL 813411, at *4 n.5. See also Rouse v. Hausman Servs. Corp., No. 93 Civ. 3215 (LLS) (MHD), 1995 WL 619868, at *4 (S.D.N.Y. Oct. 23, 1995) (stating that contract between NYSDHR and EEOC permits the NYSDHR "with [plaintiff's] written authorization" to send charge filed with it to the EEOC); Humphrey v. Council of Jewish Fed'ns, 901 F.Supp. 703, 708 n. 2 (S.D.N.Y.1995) ("'Dual filed charge' refers to a charge filed with the NYSDHR and forwarded for filing with the

[4] Because Plaintiff concedes he did not obtain a right-to-sue letter, the Court focuses its analysis on Plaintiff's other exhaustion arguments.

EEOC"). Plaintiff fails to plead that here, instead asserting in a conclusory fashion that he "filed a complaint with the [NYSDHR] and EEOC under 'dual filing' on November 25, 2020." Dkt. No. 124-4 ¶ 3. Without more (such as factual allegations regarding whether Plaintiff provided written authorization to send the NYSDHR charge to the EEOC), the Court does not find that Plaintiff exhausted his administrative remedies through dual filing. See Pustilnik, 1998 WL 813411, at *4 n.5 (holding that because "there is no indication here that plaintiff's NYSDHR charge was a dual filing with the EEOC[,] [] it cannot serve as a predicate, for exhaustion purposes, for a suit under the ADEA in federal court.").

Second, there is no case law to support Plaintiff's contention that the administrative dismissal of the NYSDHR action satisfies Title VII's exhaustion requirements.

Third, while obtaining a right-to-sue letter for exhaustion may be excused by the Court on equitable grounds, the Court declines to do so here because Plaintiff "offers no explanation for [his] failure to obtain a right to sue letter that would support such a waiver" and the Court finds none since there is no evidence of administrative exhaustion. Newsome, 24 F. App'x at 34.

Plaintiff's lack of exhaustion is thus fatal to his Title VII claims. Leave to amend the complaint to include any claims under Title VII is therefore **DENIED** on futility grounds.

**b. New York Executive Law § 296 claims**

Plaintiff also seeks to add allegations regarding his discrimination and retaliation claims under New York Executive Law § 296. Remaining Defendants contend that these claims are futile because they are barred by the three-year statute of limitations. See Kwarren v. Am. Airlines, 303 A.D.2d 722, 722 (N.Y. App. Div. 2003).

Plaintiff admits that the latest act asserted in the proposed complaint was in August of 2020, when Plaintiff's exclusive contract was not renewed "after he confronted Tacchini about the harassment." Dkt. No. 123 at 13 (citing FAC ¶¶ 99–100). However, Plaintiff counters that he meets the three-year statute of limitations because he filed his NYSDHR complaint on December 1, 2020. Dkt. No. 123 at 13.

This is not the law. Here, Plaintiff's claims in SDNY are measured "at the time the complaint was initially filed *with the division*." N.Y. Exec. Law § 279(9) (emphasis added). As such, Plaintiff had until August 2023 to file a complaint in this Court. Plaintiff's failure to meet this deadline ultimately bars his New York Executive Law § 296 claims.

Further, "any judicial proceedings are subject to New York's general three-year statute of limitations, measured from the occurrence of the discrimination, *with no tolling for the period in which the claim was pending in the administrative process*." N.Y. Exec. Law § 297(9) (emphasis added). Here, Plaintiff does not argue that these claims were subject to tolling as a result of the NYSDHR complaint. And even if he did, case law is clear that in instances where a plaintiff requests a dismissal of a

NYSDHR for administrative convenience—as Plaintiff did here (see Dkt. No. 129-3)—"he is precluded from the benefit of any tolling that might have been available had the [NYSDHR] dismissed the complaint for administrative convenience on its own." Bishop v. Henry Modell & Co., No. 08 Civ. 7541 (NRB), 2009 WL 3762119, at *8 (S.D.N.Y. Nov. 10, 2009). See also Oshinsky v. New York City, No. 98 Civ. 5467 (AGS), 2001 WL 417686, at *3 (S.D.N.Y. Apr. 24, 2001) ("DHR's dismissal of plaintiff's administrative complaints, at plaintiff's request, subjected plaintiff's [state human rights law] claims to the three-year statute of limitations generally applicable to such claims.").

Leave to amend to include NYSDHR claims is thus **DENIED**. As such, Plaintiff's motion for leave to amend and file the proposed fourth amended complaint is therefore **DENIED** in full on futility grounds.

**B. Plaintiff's third amended complaint**

As discussed above, after the Court granted Remaining Defendant's motion to strike the second amended complaint, Plaintiff filed a third amended complaint which Remaining Defendants again moved to strike. Dkt. No. 115. The Court did not rule on that motion because Plaintiff subsequently filed the motion for leave to file the fourth amended complaint. Because the Court **DENIES** Plaintiff's motion to amend and file his proposed fourth amended complaint, the Court now turns to Remaining Defendants' request to strike Plaintiff's third amended complaint. See Dkt. No. 115. Remaining Defendants reiterated this request in their response to Plaintiff's motion for leave to amend.

Remaining Defendants argue that Plaintiff again fails to limit amendments in his third amended complaint to allegations "as it concerns Agra's personal jurisdiction allegations about Miami." MTD Order, Dkt. No. 129. For instance, throughout the third amended complaint, Plaintiff replaces references to the now-dismissed MMM with terms such as "Enterprise", "The Major Model Enterprise", or "Defendants" so that the allegations extends to surviving Defendants. Dkt. No. 129.

The Court finds that Plaintiff—for the second time, and despite the Court's explicit warning—goes beyond the MTD order's limited scope. While some amendments could be seen as personal jurisdiction allegations as to Miami, other allegations are completely unrelated. See e.g., Dkt. No. 115-1 ¶ 74 (Plaintiff adding allegation that "[d]uring these meetings at the Hilton Hotel, Mr. Tacchini explicitly represented to Plaintiff that he was acting on behalf of [MMM] and its affiliated companies to recruit talent. He promised a modeling contract in exchange for sexual favors, thereby holding himself out as an agent with the authority to bind the corporate defendants to an employment relationship. Plaintiff reasonably believed that Mr. Tacchini possessed this authority, based on his long-standing, public role as a head booker and scout for the Major Model Group.").

Indeed, Plaintiff admits that some of his additions were unrelated to personal jurisdiction allegations as to Miami. Dkt. No. 116. Plaintiff avers that the inclusion of terms such as "Enterprise" are "legally necessary to establish the theory under which a Florida LLC ([Miami]) may be subject to jurisdiction in New York: by operating as part of a New York-centric association-in-fact through its alter ego

([MMM]) and co-conspirators (other Defendants)." Dkt. No. 116. Plaintiff also asserts that edits to his allegations regarding his RICO claims "are not new theories but logical elaborations on facts in the FAC (e.g., FAC ¶¶ 14, 135), responding directly to the Court's prior dismissal of MMM from the case, which necessitated a clearer articulation of how the remaining defendants, including MM, acted together." Id.

As such, Remaining Defendants' request to strike the third amended complaint is **GRANTED**.

**C. Leave to amend**

Plaintiff has received multiple bites at the apple to file an amended complaint to assert personal jurisdiction allegations over Defendant Miami. He has been explicitly warned "that amending his complaint beyond the scope of the Court's [MTD] order [] may warrant waiver of an additional opportunity to amend." Dkt. No. 112. Plaintiff's failure to comply yet again, even after these warnings, is therefore cause to **DENY** leave to further amend because allowing further amendment would result in undue prejudice to Remaining Defendants. See Foman v. Davis, 371 U.S. 178, 182 (1962) (noting that "repeated failure to cure deficiencies by amendments previously allowed [and] undue prejudice to the opposing party by virtue of allowance of the amendment" warrant denial of leave to amend). As such, Plaintiff is **DENIED** further leave to amend.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for leave to amend is **DENIED** and the operative complaint in this action is the first amended complaint at Dkt. No.

62. Consistent with the MTD order at Dkt. No. 105, Plaintiff has 90 days from the date of this order to serve his first amended complaint to Defendants Dolci, Shahrik, Gemide, and Mensboard.

**The Clerk of Court is respectfully requested to close Dkt. No. 114, 122, and 140.**

SO ORDERED.

DATED: New York, New York
September 29, 2026

Jennifer E. Willis
JENNIFER E. WILLIS
United States Magistrate Judge